**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RENNIE SOMAR<br><br>               Plaintiff,<br><br>     vs.<br><br>SOLAR MOSAIC, LLC, NYS ESSENTIAL<br>POWER, INC., and MATTHEW DRATEL,<br><br>              Defendants. | No. 1:24-cv-08637 VEC |

**PLAINTIFF RENNIE SOMAR'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANT MATTHEW DRATEL**

### I.    INTRODUCTION

Defendant Matthew Dratel, despite being properly served, has chosen not to participate in

this litigation. Default was entered against Dratel on May 23, 2025, and Dratel is deemed to have

admitted all of the factual allegations in the Amended Complaint establishing his liability for his

fraud, forgeries, and violations of federal and state law in the course of their sale of solar panels to

Plaintiff Rennie Somar. Accordingly, Plaintiff moves this Court for the entry of judgment by

default against Defendant Matthew Dratel, and request a postponement of the inquest into damages

until the matter has been fully litigated against the remaining defendants.

### II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

#### A.  Facts Deemed Admitted

Defendants are in the business of soliciting consumers for the purchase of solar panels

and/or installing solar panels on consumers' homes. ECF 32, Amended Complaint ("AC") at ¶ 2.

Defendants' sales agents solicit consumers at their homes to enter lengthy loans and other contracts

using electronic tablets such as iPads. *Id.*

In September 2023, Mr. Somar, was solicited by a salesperson at his home in Bronx, NY. *Id*. at ¶ 25. The salesman, Defendant Matthew Dratel, acting on behalf of co-defendants Solar Mosaic, LLC and NYS Essential Power, Inc., told Mr. Somar that he could put Mr. Somar into a program to help save on electric costs. *Id*. at ¶¶ 26-27. Dratel advised Mr. Somar that he would need to obtain Mr. Somar's credit report, and Mr. Somar responded that he "may or may not be approved." *Id*. at ¶¶ 28-29. Undeterred, Dratel found the name of a total stranger which he used as a "straw buyer" to qualify the otherwise unqualified Mr. Somar for an expensive system he could not afford. *Id*. at ¶ 30.

Dratel added the name "Patrice Preval" to the contracts without Mr. Somar's knowledge or consent. *Id*. at ¶ 31. Mr. Somar, does not know any "Patrice Preval," did not sign any document bearing her name, and did not approve of this person being associated with his home. *Id*. at ¶ 32. Mr. Somar did not provide authorization for his credit report to be obtained under these circumstances, and Dratel pulled his credit reports without a permissible purpose and upon false pretenses. *Id*. at ¶ 33.

Dratel showed Mr. Somar an iPad screen with a cost of $35,000.00 at 2.9% APR, for $140.00 per month, as well as a picture of solar panels on his house. *Id*. at ¶ 34. Based on the Dratel's representations, Mr. Somar signed on the tablet device with his finger where the Dratel pointed. *Id*. at ¶ 35.  Mr. Somar was not provided, nor given the opportunity to review, any paperwork or documents, paper or electronic. *Id*. Dratel set up a fake email account for Mr. Somar, and unbeknownst to Mr. Somar, caused Defendant Solar Mosaic to email Mr. Somar loan documents to the newly created fake email account. *Id*. at ¶ 36.

Upon information and belief, having set up a fake email account for Mr. Somar to which Solar Mosaic sent loan documents for the solar panel installation, Dratel signed those Solar Mosaic

loan documents on behalf of Mr. Somar through Docusign. *Id*. at ¶ 37. These fraudulent loan documents which were never shown to Mr. Somar contained – in addition to the name of the straw buyer Patrice Preval – much different and more expensive terms: a loan with a total of payments of $196,457.85 at 10.84% APR, for $663.42 per month. *Id*. at ¶ 38. Dratel did not provide a copy of any contract or other paperwork to Mr. Somar, including notice of right to cancel. *Id*. at ¶ 39. Dratel eventually caused solar panels to be installed on Mr. Somar's home, even though no contract was provided to, nor signed by, Mr. Somar. *Id*.

Upon learning of the fraudulent Loan Contract, Mr. Somar attempted to cancel the forged and hidden Loan Contract. *Id*. at ¶ 40. But despite receiving this notice of cancellation, Dratel did not cancel the contract. *Id*. at ¶ 41. Mr. Somar continues to be bound by the forged contracts and the payment terms therein and have made demands for payment. *Id*. at ¶ 42.

As a result of Dratel's willful, wanton, reckless, and/or negligent conduct, Mr. Somar's home is encumbered by a lien that was placed on his home for the solar loan, and overly expensive solar panels. *Id*. at ¶ 52. Dratel's willful, wanton, reckless, and/or negligent conduct fraudulent duped Mr. Somar into contacts he never saw, burdened his home with solar panels he did not want, and has subjected Mr. Somar to demands for payment under the forged contracts. *Id*. at ¶ 53.

### B.  Procedural History

Mr. Somar filed the instant suit against Dratel for violations of New York and federal law. Dratel did not file an answer to the Amended Complaint or otherwise appear in the case. Dratel was served the Amended Complaint and a Summons on March 20, 2025. On April 23, 2025, Plaintiff's counsel sent Dratel a letter advising that the deadline to respond to the Amended Complaint had expired, and warning that should no response be filed by May 3, 2025, Mr. Somar would request that the Court enter a default.

On May 8, 2025, the Court ordered Mr. Somar to move for a default judgment against Dratel. ECF 40. Mr. Somar filed a Proposed Clerk's Certificate of Default on May 22, 2025. ECF 44. The Clerk issued a Certificate of Default as to Defendant Dratel on May 23, 2025. ECF 46. The Court's May 8, 2025 Order instructed that Mr. Somar must move for a default judgment by June 6, 2025. ECF 40.

### III.   ARGUMENT

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The first is the entry of default for failure to plead or defend. Fed. R. Civ. P. 55(a). The second step is the entry of default judgment. Fed. R. Civ. P. 55(b). After entry of default, "all well-pled facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true." *Reisman v. Ne. Power & Gas LLC*, 720 F. Supp. 3d 279, 291 (S.D.N.Y. 2024). "The court may also rely on factual allegations pertaining to liability contained in affidavits and declarations submitted by the plaintiff." *Id*.

To enter a default judgment, the court must first "satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed." *Id*. "Once liability has been established, a plaintiff must provide admissible evidence establishing the amount of damages with reasonable certainty." *Id*. "To assess whether the plaintiff has established a sufficient basis for damages, a court has the discretion, but is not required, to hold a hearing." *Id*. (citing Fed. R. Civ. P. 55(b)(2). "An inquest into damages may be conducted on the papers, without an evidentiary hearing, where there is a sufficient basis on which to make a calculation." *Reisman*, 720 F. Supp. 3d at 291. But "[i]n cases where non-defaulting defendants remain in the case, courts generally decline to award damages as premature and postpone the damages inquest until the case has been

fully litigated against the remaining parties." Gesualdi v. Eagle Insulation Distribs. Supply Inc.,

No. 22-03790, 2025 U.S. Dist. LEXIS 16223 (E.D.N.Y. Jan. 29, 2025)

### A.  Dratel willfully violated the Fair Credit Reporting Act

In 1970, Congress enacted the Fair Credit Reporting Act in recognition of the need to

protect "the consumer's right to privacy" in the credit reporting system. 15 U.S.C. § 1681(a)(4).

To that end, the FCRA makes it unlawful for any person to "use or obtain a consumer report for

any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report

is authorized to be furnished under this section, and (2)" the purpose is certified. 15 U.S.C. §

1681b(f). Such purposes include, *inter alia*, employment purposes,[1] for the underwriting of

insurance,[2] or to review an existing account to determine whether the consumer continues to meet

the account terms.[3] Under no circumstances may a third party "troll for reports" or "request a report

on a whim" without a permissible purpose. *Stergiopoulos & Ivelisse Castro v. First Midwest*

*Bancorp, Inc.*, 427 F.3d 1043, 1047 (7th Cir. 2005).

The FCRA provides a right of action to those who willfully or negligently violate this

provision by using or obtaining a consumer report for an impermissible purpose. *See* 15 U.S.C. §§

1681n, 1681o. Additionally, the FCRA makes it criminally liable—a felony—for '[a]ny person

who knowingly and willfully obtains information on a consumer from a consumer reporting

agency under false pretenses.'" 15 U.S.C. § 1681q. "By virtue of 15 U.S.C. § 1681n, a consumer

may also maintain a civil action against any 'user of information' who 'willfully' violates Section

1681q." *Scott v. Real Est. Fin. Grp.*, 183 F.3d 97, 99 (2d Cir. 1999).

---

[1]      15 U.S.C. § 1681b(a)(e)(B).
[2]      15 U.S.C. § 1681b(a)(e)(C).
[3]      15 U.S.C. § 1681b(a)(3)(F)(ii).

Here, Dratel lacked a permissible purpose to use Mr. Somar's credit report. Mr. Somar did not consent to Dratel using or obtaining his consumer report, but Dratel did so anyway. ECF 32, AC at ¶¶ 28-29, 33. Indeed, Dratel pulled Mr. Somar's "credit reports without a permissible purpose and upon false pretenses." *Id*. at ¶ 33. Dratel knew or should have known that Mr. Somar did not initiate any credit transaction or authorize any inquiry into Mr. Somar's credit information at any time. *Id.* at ¶¶ 33, 100-101.

Potential creditors who desire to enter into credit transactions often argue that they had a "legitimate business need for the information," 15 U.S.C. § 1681b(a)(3)(F) or intended "to use the information in connection with a credit transaction involving the consumer[.]" 15 U.S.C. § 1681b(a)(3)(A). However, both of these claimed purposes also require that the consumer either <u>initiate the transaction</u> or <u>consent</u> to the credit pull. 15 U.S.C. §§ 1681b(a)(3)(F)(i), 1681b(c)(1).

Courts around the country have found that a transaction is not initiated by the consumer when the consumer is essentially comparison shopping or requesting information. *See, e.g.*, *Littlejohn v. Vivint Solar*, No. 1:16-CV-9446, 2020 WL 2521276, at *9 (D.N.J. May 18, 2020) (door-to-door sale; "a request for general information about products and prices offered does not involve a business transaction initiated by the consumer"). For example, in *Boone v. T-Mobile USA Inc.*, No. 17-378, 2018 WL 588927 (D.N.J. Jan. 29, 2018), the consumer alleged that he "made a "general inquiry about the availability of cell phone plans and rates," stated his preference that he did not want a hard credit inquiry, and "never signed any agreement and never agreed to any services from" the defendant. *Id.* at *14. The court held that these actions "do not amount to a 'business transaction . . . initiated by the consumer.'" *Id.*

The court found support for this uncontroversial conclusion in a 1998 Advisory Opinion of the Federal Trade Commission addressing the extent to which a consumer "initiates" a business

transaction when making inquiries at a car dealership. *See id.* (*citing* FTC Advisory Opinion on the Fair Credit Reporting Act, 1998 WL 34323748, at *1 (Feb. 11, 1998) [hereinafter "FTC Opinion"]).[4] The FTC Opinion states that as a general matter, a consumer's "request for general information about products and prices offered does not involve a business transaction initiated by the consumer." *Id.* This holds true when a consumer asks a car dealer questions about pricing and financing, because such questions do "not necessarily indicat[e] an intent to purchase or lease a vehicle from that particular dealer." *Id.*

The FTC explained that a dealer may obtain a consumer report without the consumer's permission "[o]nly in those circumstances **where it is clear** both to the consumer and to the dealer that the consumer is actually initiating the purchase or lease of a specific vehicle[.]" FTC Opinion at p. 2 (emphasis added). The dealer's need for the information must be "directly related to the completion of the transaction. For example, a dealer may obtain a report, if one is necessary, in order to arrange financing requested by the consumer." *Id.*

At no point was it "clear" that Mr. Somar was actually initiating a purchase or credit transaction. When Dratel stated he would need to pull Mr. Somar's credit reports, Mr. Somar merely responded that his credit would "may or may not be approved." ECF 32 at ¶¶ 28-29.

Dratel willfully violated the FCRA and liability is established by the allegations in the Amended Complaint.

---

[4]    This opinion letter is "entitled to respect" based on its "power to persuade," as such opinion letters "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *M. Fortunoff of Westbury Corp. v. Peerless Ins. Co.*, 432 F.3d 127, 138 (2d Cir. 2005) (quoting *Skidmore v. Swift*, 323 U.S. 134, 140 (1944)). Courts have found the FTC Opinion to be persuasive. *See, e.g.*, *Miller v. Dish Network, L.L.C.*, 326 F. Supp. 3d 51, 74 (E.D. Va. 2018) ("[T]he Court finds the FTC's guidance to be persuasive and adopts it here.").

### B.  Dratel is liable for fraudulent nondisclosure[5]

Under New York law, the elements of fraud are: "(1) the defendant made a misrepresentation or a material omission of fact which was false and which the defendant knew to be false; (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it; (3) the plaintiff justifiably relied on the misrepresentation or material omission; and (4) injury." *Bannister v. Agard*, 125 A.D.3d 797, 798 (N.Y. App. Div. 2015). A cause of action for fraudulent concealment requires also requires the plaintiff to "allege that the defendant had a duty to disclose the material information." *Swartz v. Swartz*, 145 A.D.3d 818, 823 (N.Y. App. Div. 2016). When the seller has superior knowledge about the nature of goods, courts have allowed buyers to recover when "concealment of an important fact has misled the buyer into thinking a product was something other than what it was and where there has been clear reliance by the buyer on such representations." *McGregor v. Dimou*, 422 N.Y.S.2d 806, 810 (Civ. Ct., New York Cty., 1979).

Here, Dratel is liable for his deliberate failure to disclose several material facts, inducing Mr. Somar to continue the transaction.  Without Mr. Somar's knowledge or consent, Dratel added a stranger's name to co-sign Mr. Somar's contracts to get the loan approved.  ECF 32, at ¶¶ 30-31. Dratel used his tablet to present favorable contract terms to Mr. Somar and Mr. Somar signed the tablet with his finger based on Dratel's representations. *Id*. at ¶¶ 34-35. Dratel created a fake email address for Mr. Somar to ensure Mr. Somar did not receive loan documents for the solar panel installation. *Id*. at ¶ 36. As such, Mr. Somar did not receive his notice of right to cancel. *Id*. at ¶ 39. Dratel forged Mr. Somar's signature on these contract via Docusign. *Id*. at ¶ 37.

---

[5]        Labeled as "fraudulent concealment" in the Complaint. ECF 1, Count IV.

The forged loan documents were never sent to Mr. Somar and the forged contract was for a total of payments more than five times of what was presented to Mr. Somar on Dratel's tablet. *Id*. at ¶¶ 34-37.  Mr. Somar continues to be bound by the forged contracts. *Id*. at ¶ 42.

Dratel's liability for fraudulent nondisclosure is plainly established by the allegations in the Amended Complaint.

### C.  Dratel violated the Credit Repair Organizations Act

Under the Credit Repair Organizations Act ("CROA") "[n]o person may . . . make any statement . . . which is untrue or misleading . . . with respect to any consumer's credit worthiness, credit standing, or credit capacity to . . . any person . . . to whom the consumer has applied or is applying for an extension of credit . . . ." *Kahraman v. Countrywide Home Loans, Inc.*, 886 F.Supp.2d 114, 123 (E.D.N.Y. 2012) (citing 15 U.S.C. § 1679b(a)(1)).

Dratel made untrue and misleading statements about Mr. Somar's creditworthiness and included a stranger on Mr. Somar's contracts as a co-buyer. Ex. 1, AC at ¶¶ 30-32.  Dratel made these misrepresentations, and included the co-buyer on Mr. Somar's contract, with aim to qualify Mr. Somar for financing the solar panels. *Id*. at ¶ 96.  Mr. Somar was otherwise unqualified to receive financing. *Id*. at ¶ 30.

Dratel's liability for violation of the CROA is established by the allegations in the Amended Complaint.

### D.  Dratel violated New York General Business Law

The New York General Business Law ("GBL") is "directed at wrongs against the consuming public." *Singh v. City of New York*, 217 N.E.3d 1, 7 (N.Y. 2023). The GBL applies on its face virtually all economic activity and "seeks to secure 'an honest marketplace' where "trust," and not deception, prevails." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v.*

*Matthew Bender & Co.,* 37 N.Y.3d 169, 176 (N.Y. 2021) (internal citations omitted). The GBL provides that deceptive business acts or practices occurring in New York are unlawful. N.Y. Gen. Bus. Law § 349. Parties claiming a violation of section 349 must "charge conduct that is consumer related" which is found when the deceptive conduct has a "'broad impact on consumers at large." *Singh*, 217 N.E.3d. at 7 (internal citations omitted). Solar panel sales transactions have been found by courts in this District to constitute a "consumer-oriented" transaction. *Lojewski v. Grp. Solar USA, LLC*, 708 F. Supp. 3d 342, 361 (S.D.N.Y. 2023).

Dratel violated the GBL in several respects. Dratel included a stranger as a co-buyer on Mr. Somar's loan contracts in effort to get Mr. Somar approved for financing, *Id*. at ¶¶ 30-32, 96. Dratel presented favorable loan terms to Mr. Somar on a tablet and obtained Mr. Somar's signature based on those false representations. *Id*. at ¶¶ 34-35. Dratel forged Mr. Somar's signature on another contract for a loan more than five times that what was initially presented to Mr. Somar on the tablet. *Id*. at ¶¶ at 34-35, 37-38. Dratel created a fake email address which he then provided to Solar Mosaic, causing loan documents to be sent to the fake email account and ensuring Mr. Somar would not receive them. *Id*. at ¶ 36. When Mr. Somar eventually provided a notice of cancellation to Defendants, Defendants refused to honor Mr. Somar's right to cancellation of the loan and home improvement contracts. *Id*. at ¶¶ 40-42.

The admitted allegations in the Amended Complaint establish Dratel's numerous violations of the GBL and Dratel's liability is clear.

## IV.    CONCLUSION

The facts in the Amended Complaint establish Defendant Matthew Dratel's liability under the FCRA, CROA, New York General Business Law and for fraudulent concealment. Plaintiff

Rennie Somar requests a postponement of inquest into damages until this matter is fully litigated against the remaining defendants.


Dated: June 6, 2025                                                    THE PLAINTIFF RENNIE SOMAR


/s/ *Andrew M. Milz*                                              /s/ *Brian L. Bromberg*
Andrew M. Milz (pro hac vice)                          Brian L. Bromberg
Flitter Milz, P.C.                                                      Bromberg Law Office, P.C.
450 N. Narberth Ave., Suite 101                        352 Rutland Road, #1
Narberth, PA 19072                                              Brooklyn, NY 11225
Phone: (610) 822-0781                                        Phone: (212) 248-7906
amilz@consumerslaw.com                                 brian@bromberglawoffice.com

11