## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MOSAIC SUSTAINABLE FINANCE CORPORATION, *et al.*,[1] | ) | Case No. 25-90156 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## FOURTH AMENDED JOINT CHAPTER 11 PLAN OF MOSAIC SUSTAINABLE FINANCE CORPORATION AND CERTAIN OF ITS AFFILIATED DEBTORS

**PAUL HASTINGS LLP**
Charles Persons (TX Bar No. 24060413)
Schlea Thomas (TX Bar No. 24131710)
609 Main Street, Suite 2500
Houston, Texas 77002
Telephone:    (713) 860-7300
Facsimile:    (713) 353-3100
Email:  charlespersons@paulhastings.com
          schleathomas@paulhastings.com

**PAUL HASTINGS LLP**
Matthew M. Murphy (admitted *pro hac vice*)
Geoffrey M. King (admitted *pro hac vice*)
Michael Jones (admitted *pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:    (312) 499-6000
Facsimile:    (312) 499-6100
Email:  mattmurphy@paulhastings.com
          geoffking@paulhastings.com
          michaeljones@paulhastings.com

*Counsel to the Debtors
and Debtors in Possession*

Dated: September 3, 2025

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Mosaic Sustainable Finance Corporation (6802); Solar Mosaic LLC (3655); Modern Home LLC (4998); Mosaic Funding Holdings LLC (0866); and SMCTX LLC (6303). The service address for each of the above Debtors is 601 12th Street, Suite 325, Oakland, California 94607.

## FOURTH AMENDED JOINT CHAPTER 11 PLAN OF MOSAIC
## SUSTAINABLE  FINANCE CORPORATION AND ITS AFFILIATED DEBTORS

Mosaic Sustainable Finance Corporation, Modern Home LLC, and Solar Mosaic LLC, each debtors and debtors-in-possession in the above-captioned cases (each, a "***Debtor***," and collectively, the "***Debtors***") propose this fourth amended joint chapter 11 plan for the resolution of the outstanding Claims against, and Interests in, the Debtors.[2]

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement, filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, results of operations, historical financial information, projections, and future operations, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under the Plan.

**The Debtors are pursuing on parallel paths both the Plan Equitization Transaction and a Sale Transaction, all as described in further detail in the Disclosure Statement.  If the Debtors do not timely receive a bid for the purchase of all or substantially all of their assets in accordance with the terms and conditions set forth in the Bidding Procedures Order, they will consummate the Plan Equitization Transaction.**

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I.
## DEFINITIONS AND INTERPRETATION

### A.      *Definitions.*

The following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural):

**1.1.** "***AAL***" means that certain Agreement Among Lenders dated as of March 27, 2024, by and among the Prepetition Secured Agent, the Prepetition First Out Lenders and the Prepetition Last Out Lenders, as amended, restated, amended or restated, supplemented, or otherwise modified from time to time.

***1.2.***      "***ABS Interests***" means the ABS Vehicle-issued notes held by the Debtors.

---

[2] Debtors Mosaic Funding Holdings LLC and SMCTX LLC did not have any Holders of Claims submit votes for the Plan. Accordingly, these Debtors will be wound down in an orderly fashion and their Chapter 11 Cases will be dismissed in due course.

1.3. "**ABS Parties**" means, collectively, each of the ABS Vehicles, U.S. Bank and Wilmington Trust (but only with respect to any role related to any of the ABS Vehicles).

1.4. "**ABS Parties Release**" has the meaning set forth in <u>Section 12.9</u>.

1.5. "**ABS Released Parties**" has the meaning set forth in <u>Section 12.9.</u>

1.6. "**ABS Vehicles**" means the various asset-backed securitization vehicles to which certain of the loans originated by the Debtors were ultimately sold in connection with the issuance of notes that yielded proceeds that funded the Debtors' origination activities, including those entities set forth in the Plan Supplement.

1.7. "**Administrative Bar Date**" means the deadline for filing all requests for allowance and payment of Administrative Expense Claims, which, except in the case of Professional Fee Claims, shall be thirty (30) days after the Effective Date. Professional Fee Claims shall be filed in accordance with the provisions of Section 3.3 herein.

1.8. "**Administrative Expense Claim**" means a Claim (other than any DIP Claim) for costs and expenses of administration of the Chapter 11 Cases Allowed under Bankruptcy Code sections 503(b), 507(a)(2), 507(b), or, if applicable, 1114(e)(2), including, but not limited to: (a) any actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors (including, but not limited to, wages, salaries, commissions for services, and payments for inventories, leased equipment, and premises); (b) compensation for legal, financial, advisory, accounting, and other services and reimbursement of expenses Allowed by the Bankruptcy Court under Bankruptcy Code sections 328, 330, 331, 363, or 503(b) to the extent incurred on or before the Effective Date; (c) all U.S. Trustee Fees; (d) any 503(b)(9) Claims; and (e) any Claims that have been designated "Administrative Claims" by Final Order of the Bankruptcy Court.

1.9. "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code as if such Entity were a debtor in a case under the Bankruptcy Code, <u>provided</u>, <u>that</u>, that no party shall constitute an Affiliate solely due to being an assignee or transferee of a loan originated by Solar Mosaic LLC.

1.10. "**Affinity Sponsors**" means Affinity Partners Parallel Fund I LP, Affinity Partners Fund I LP, Affinity Partners GP LP, A Fin Management LLC, SBOC Co. LLC, and Affinity Partners.

1.11. "**Allowed**" means, with respect to a Claim under this Plan, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim or Proof of Interest filed by the Bar Date or a request for payment of an Administrative Expense Claim filed by the Administrative Bar Date, as applicable (or for which Claim a Proof of Claim or Proof of Interest is not required under the Plan, the Bankruptcy Code, or a Final Order, including the Interim DIP Order and Final DIP Order); (b) a Claim that is scheduled by the Debtors as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim or Proof of Interest, as applicable, has been timely filed; or (c) a Claim allowed pursuant to the Plan or a Final Order, including the Interim DIP Order and Final DIP Order; <u>provided</u>, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be Allowed only if and to the extent that

2

with respect to such Claim no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no contrary or superseding Proof of Claim or Proof of Interest is or has been timely filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable. For the avoidance of doubt, a Proof of Claim or Proof of Interest filed after the Bar Date or a request for payment of an Administrative Expense Claim filed after the Administrative Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim. "Allow" and "Allowing" shall have correlative meanings.

1.12. "*Assumed Contracts*" means those Executory Contracts and Unexpired Leases that are to be (i) assumed by the Debtors and continue in force with the Reorganized Debtors in the event of a Plan Equitization Transaction; or (ii) assumed by the Debtors and assigned to the applicable Successful Bidder or its designee in the event of a Sale Transaction pursuant to and as set forth in any applicable Sale Documents.

1.13. "*Assumed Contracts List*" means the list or lists of Assumed Contracts, which will be included in preliminary form in the Plan Supplement.

1.14. "*Assumed Liabilities*" has the meaning set forth in any Sale Documents (or other such similar term as may be used in such Sale Documents).

1.15. "*Auction*" means an auction (if any) conducted by the Debtors to solicit bids for a sale or disposition of all or substantially all of the Debtors' assets, free and clear of all Liens, Claims, encumbrances, and other interests pursuant to section 363 of the Bankruptcy Code, pursuant to the terms and conditions of the Bidding Procedures.

1.16. "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims, actions or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under chapter 5, and section 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

1.17. "*Ballot*" means the form distributed by the Debtors or the Claims Agent to Holders of impaired Claims entitled to vote on this Plan on which the acceptance or rejection of this Plan is to be indicated.

**1.18.** "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

**1.19.** "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas, or any other court exercising competent jurisdiction over the Chapter 11 Cases or any proceeding therein.

**1.20.** "**Bankruptcy Rules**" means (a) the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States under section 2075 of title 28 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases, (b) the Local Rules, and (c) any chambers rules of the Bankruptcy Court.

**1.21.** "**Bar Date**" means the applicable date established by the Bankruptcy Court by which respective Proofs of Claim and Interests must be filed.

**1.22.** "**Bidding Procedures**" means procedures pursuant to the Bidding Procedures Order governing the submission and evaluation of bids to purchase all or substantially all of the Debtors' assets.

**1.23.** "**Bidding Procedures Order**" means an order of the Bankruptcy Court approving the Bidding Procedures.

**1.24.** "**Business Day**" means any day other than a Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or a day on which banks are not open for general business in New York, New York.

**1.25.** "**Cash**" means the legal currency of the United States and equivalents thereof.

**1.26.** "**Causes of Action**" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws).

**1.27.** "**Chapter 11 Cases**" means the cases (anticipated to be jointly administered cases) under chapter 11 of the Bankruptcy Code to be commenced by the Debtors on the Petition Date in the Bankruptcy Court.

**1.28.** "**Claim**" means any "claim" as defined in section 101(5) of the Bankruptcy Code against any Debtor or property of any Debtor, including any Claim arising after the Petition Date.

**1.29.** "*Claims Agent*" means Kroll Restructuring Administration LLC in its capacity as noticing, claims and solicitation agent for the Debtors pursuant to one or more orders of the Bankruptcy Court.

**1.30.** "*Claims Objection Deadline*" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 30 days after the Effective Date and (b) such other deadline as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by an order of the Bankruptcy Court for objecting to such Claims.

**1.31.** "*Claims Register*" means the official register of Claims maintained by the Claims Agent.

**1.32.** "*Class*" means a category of Claims or Interests established under Article IV of this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**1.33.** "*Collateral*" means any property, wherever located, or interest in property of the Estates subject to a Lien to secure the payment or performance of a Claim.

**1.34.** "*Confirmation Date*" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**1.35.** "*Confirmation Hearing*" means a hearing to be held by the Bankruptcy Court regarding confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.36.** "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as may be amended, modified, or supplemented from time to time, which shall be subject to the Definitive Document Consent Rights.

**1.37.** "*Consumer Credit Transaction Claims*" means any Claim related to an interest in a consumer credit transaction that is subject to the Truth in Lending Act or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time).

*1.38.* "*Consumer Liability Insurance Policies*" means, collectively, all insurance policies (including any "tail policies" and all agreements, documents, or instruments related thereto) issued at any time to or providing coverage to any of the Debtors for any liability arising out of Consumer Credit Transaction Claims. Solar Mosaic LLC shall have priority to the proceeds of the Consumer Liability Insurance Policies for any of Solar Mosaic LLC's liabilities (such as defense costs and expenses) over any other claims, creditors, judgments or settlements.

**1.39.** "*Creditors' Committee*" means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases by the U.S Trustee on June 19, 2025, in accordance with section 1102 of the Bankruptcy Code, as the same may be reconstituted from time to time.

**1.40.** "*Cure Amount*" has the meaning set forth in Section 10.2 of this Plan.

**1.41.** "**_Cure Dispute_**" has the meaning set forth in <u>Section 10.2</u> of this Plan.

**1.42.** "**_D&O Liability Insurance Policies_**" means, collectively, all insurance policies (including any "tail policies" and all agreements, documents, or instruments related thereto) issued at any time to or providing coverage to any of the Debtors for current or former directors', managers', and officers' liability; provided that the D&O Liability Insurance Policies shall not include the Consumer Liability Insurance Policies unless and until either (a) a particular Consumer Liability Insurance Policy is determined by a final adjudication of a court having relevant jurisdiction, to not apply to any Consumer Credit Transaction Claim; or (b) final resolution of all the Consumer Credit Transaction Claims against Solar Mosaic LLC.

**1.43.** "**_Debtor(s)_**" has the meaning set forth in the preamble.

**1.44.** "**_Debtor ABS Agreements_**" has the meaning set forth in <u>Section 12.9.</u>

**1.45.** "**_Debtor Loan Interests_**" means any consumer loans originated by Solar Mosaic LLC held on Solar Mosaic LLC's balance sheet as of the Effective Date.

**1.46.** "**_Debtor Releasing Party_**" means any Releasing Party that is a Debtor.

**1.47.** "**_Definitive Documents_**" means (a) the Plan; (b) the Confirmation Order; (c) the Disclosure Statement; (d) the Disclosure Statement Order; (e) the Plan Supplement; (f) the DIP Documents; (h) the Litigation Trust Agreement; (i) the Plan Administrator Agreement; (j) the Lending Club License; (k) any and all documentation required to implement, issue, and distribute the Plan Equitization Transaction, including any transition services agreements; (l) the New Organizational Documents; and (m) any other agreements, documentation or instruments necessary or advisable to implement, consummate, or document the transactions contemplated by the Plan (in each case, including all exhibits, schedules, amendments, modifications, supplements, appendices, annexes, instructions, and attachments thereto).

**1.48.** "**_DIP Agent_**" means the administrative and the collateral agent for the DIP Lenders with respect to the DIP Credit Agreement, which shall be either (a) Forbright Bank (f/k/a Congressional Bank) or (b) another financial institution selected by, and qualified to perform the duties customarily associated with such roles as determined by, the Required DIP Lenders in consultation with TopCo.

**1.49.** "**_DIP Budget_**" shall have the meaning assigned to the term "Approved Budget" in the DIP Credit Agreement.

**1.50.** "**_DIP Claims_**" means all Claims of the DIP Agent and/or the DIP Lenders related to, arising under, or in connection with the Interim DIP Order, Final DIP Order and the DIP Documents, including, without limitation, Claims for all principal amounts outstanding, interest, fees, reasonable and documented expenses (including the reasonable and documented expenses of counsel as set forth in the DIP Credit Agreement), costs and other charges of the DIP Agent and the DIP Lenders in respect of the obligations of the Debtors arising under the DIP Credit Agreement.

**1.51.** "***DIP Credit Agreement***" means the Debtor-in-Possession Credit Agreement, dated as of June 6, 2025, by and among Solar Mosaic LLC, the DIP Lenders and DIP Agent, as the same may be modified, amended or supplemented from time to time, in accordance with the terms thereof (and including any and all documents and instruments executed in connection therewith).

**1.52.** "***DIP Documents***" means collectively, the DIP Motion, the DIP Orders, and the DIP Credit Agreement and any other agreements, documents, and instruments delivered or entered into in connection therewith, including, without limitation, any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents, as any of the foregoing may be amended, modified, or supplemented from time to time in accordance with the terms hereof.

**1.53.** "***DIP Lenders***" means, collectively, and as of the relevant time, those lenders that are party to the DIP Credit Agreement.

**1.54.** "***DIP Loans***" means the loans under the debtor-in-possession financing facility on the terms and conditions set forth in the DIP Credit Agreement.

**1.55.** "***DIP Motion***" means the motion filed by the Debtors seeking entry of the DIP Orders, together with all exhibits thereto and any declarations, affidavits or other documents filed in connection with such motion.

**1.56.** "***DIP Orders***" means the Interim DIP Order and Final DIP Order.

**1.57.** "***Disallowed***" means a finding or conclusion of law of the Bankruptcy Court in a Final Order, or provision in the Confirmation Order, disallowing a Claim or Interest.

**1.58.** "***Disbursing Agent***" means the Wind Down Debtors or the Entity designated by the Wind Down Debtors, who may be the Plan Administrator, to make distributions under this Plan.

**1.59.** "***Disclosure Statement***" means the disclosure statement that relates to this Plan, including all exhibits and schedules annexed thereto or referred to therein (in each case, as it or they may be amended, modified, or supplemented from time to time).

**1.60.** "***Disclosure Statement Hearing***" means a hearing held by the Bankruptcy Court to consider approval of the Disclosure Statement as containing adequate information as required by section 1125 of the Bankruptcy Code, as the same may be adjourned or continued from time to time.

**1.61.** "***Disclosure Statement Order***" means the order of the Bankruptcy Court approving the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, as may be amended, modified, or supplemented from time to time.

**1.62.** "***Disputed Claim***" means, as of any relevant date, any Claim, or any portion thereof: (a) that is not an Allowed Claim as of the relevant date; and/or (b) is otherwise disputed by any of the Debtors, the Wind Down Debtors, the Reorganized Debtors, or the Plan

Administrator, as applicable, in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled; or (c) for which a Proof of Claim has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the relevant date.

1.63. *"Distributable Asset Proceeds"* means the proceeds realized by the Wind Down Debtors and Plan Administrator in connection with one or more sales of the ABS Interests and any other assets of the Wind Down Debtors following the Effective Date.

1.64. *"Distribution Date"* means: (a) with respect to Administrative Expense Claims, Priority Non-Tax Claims, Priority Tax Claims, Other Secured Claims, and U.S. Trustee Fees, the date that is the latest of: (i) the Effective Date; (ii) the date such Claim would be due and payable in the ordinary course of business; and (iii) any date that is within thirty (30) days after such Claim becomes an Allowed Claim or otherwise becomes payable under this Plan (or, if such date is not a Business Day, on the next Business Day thereafter); (b) with respect to Fee Claims, the date (or as soon thereafter as reasonably practicable) that such Claims become Allowed Claims; and (c) with respect to all other Claims, the Effective Date or as soon as reasonably practicable thereafter.

1.65. *"Distribution Record Date"* means, other than with respect to securities deposited with the DTC, the date for determining which Holders of Claims are eligible to receive initial distributions under the Plan, which date shall be the Confirmation Date. The Distribution Record Date shall not apply to distributions to be made through DTC, which shall be made, if any, in accordance with the customary exchange procedures of DTC or this Plan or otherwise in accordance with the applicable procedures of DTC.

1.66. *"DTC"* means the Depository Trust Company.

1.67. *"Effective Date"* means the date specified by the Debtors in a notice filed with the Bankruptcy Court as the date on which this Plan shall take effect, which date shall be the first Business Day on which all of the conditions set forth in Section 11.2 of this Plan have been satisfied or waived and no stay of the Confirmation Order is in effect.

1.68. *"Entity"* has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.69. *"Equity Interest"* means collectively, the shares (or any class thereof) of capital stock (including common stock and preferred stock), limited liability company interests, and any other equity, ownership, membership, or profits interests of any Debtor, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of capital stock (including common stock and preferred stock), limited liability company interests, or other equity, ownership, membership, or profits interests of any Debtor (in each case whether or not arising under or in connection with any employment agreement).

1.70. *"Estate"* means each estate created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

1.71.    "*Exculpated Party*" means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (a) the Debtors; (b) the Creditors' Committee and each of its members, and (c) the Plan Administrator.

1.72.    "*Exculpation*" means the exculpation provision set forth in <u>Article XII</u> of the Plan.

1.73.    "*Executory Contract*" means a contract to which one or more Debtors is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

1.74.    "*Existing Equity Interests*" means Equity Interests existing as of the Effective Date.

1.75.    "*Existing Intercompany Equity Interests*" means any Existing Equity Interests in a Debtor or a subsidiary of a Debtor that are owned or held by another Debtor.

1.76.    "*Existing TopCo Equity Interests*" means any Existing Equity Interests in TopCo.

1.77.    "*Exit Term Loan Credit Agreement*" means the credit agreement between the Reorganized Debtors or its subsidiaries or Affiliates, as applicable, and the lenders party thereto to effectuate the issuance of the Exit Term Loans.

1.78.    "*Exit Term Loan Documents*" means the Exit Term Loan Credit Agreement and together with all other related documents, instruments, and agreements in respect of the Exit Term Loans, in each case, as amended, restated, modified, or supplemented from time to time.

1.79.    "*Exit Term Loans*" means term loans under the Exit Term Loan Credit Agreement comprising converted New Money DIP Claims.

1.80.    "*Exit Term Sheet*" means the term sheet setting forth the material terms of the Exit Term Loan Credit Agreement and other Exit Term Loan Documents, which will be filed as part of the Plan Supplement.

1.81.    "*Fee Claim*" means a Claim by a Professional Person for compensation, indemnification or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code in connection with the Chapter 11 Cases, including in connection with final fee applications of such Professional Persons.

1.82.    "*Final DIP Order*" means an order of the Bankruptcy Court approving the DIP Loans and granting the Debtors the authority to use cash collateral and provide certain "adequate protection" (as such term is defined in sections 361 and 363 of the Bankruptcy Code) on a final basis.

1.83.    "*Final Order*" means an order, ruling or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases (or by the clerk of such other court of competent jurisdiction on the docket of such court), which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or

move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure has been or may be filed with respect to such order or judgment; provided, further, that no order or judgment shall fail to be a Final Order solely because of the susceptibility of a Claim to a challenge under section 502(j) of the Bankruptcy Code.

1.84. **"*Financing Partners*"** means the various financial institutions through which completed loans originated through the Debtors were funded and/or to which such loans were sold, including, without limitation, the Warehouses, and those entities set forth in the Plan Supplement; *provided that* Financing Partners shall not include any of the ABS Vehicles.

1.85. **"*Funding Notice*"** has the meaning set forth in Section 7.31 of the Plan.

1.86. "**General Unsecured Claim**" means any unsecured Claim, other than an Administrative Expense Claim, a Priority Non-Tax Claim, a Priority Tax Claim, Consumer Credit Transaction Claim, or an Intercompany Claim, including, without limitation, Claims arising from the rejection of Executory Contracts and Unexpired Leases, and Claims arising from any litigation or other court, administrative or regulatory proceeding, including damages or judgments entered against, or settlement amounts owing by, a Debtor in connection therewith.

1.87. "**General Unsecured Claims Distribution**" means, to the extent the Restructuring Transactions are consummated pursuant to a Sale Transaction, an amount equal to (a) the aggregate net Cash Sale Proceeds (if any) allocable to any particular Debtor, *less* (b) the aggregate amount required to pay in full in Cash all Allowed Claims that are senior to General Unsecured Claims and Consumer Credit Transaction Claims of that particular Debtor in priority of payment under the Bankruptcy Code (including the satisfaction in full of the DIP Claims and the Prepetition Secured Loan Claims, including any interest, fees, or premiums payable thereon) or applicable nonbankruptcy law.

1.88. **"*Global Settlement*"** means the settlement by and among the Debtors, the DIP Lenders, the Prepetition Secured Lenders, the Creditors' Committee, and the Sponsors, which settlement is incorporated into the terms of this Plan.

1.89. "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.90. "**GUC Recovery Pool**" means Cash proceeds of at least $1,000,000, contributed to the Debtors by the Sponsor Payment and as funded in accordance with Section 7.34.

1.91. "**Holder**" means any Entity or Person holding a Claim or Interest.

**1.92.** *"Independent Investigation"* means an investigation by the Debtors' independent director into potential claims and causes of action against, among others, the Debtors' current and former directors and officers, shareholders, and other related parties.

**1.93.** *"Insurance Proceeds Recovery Action"* means an action commenced or continued by a Holder of a Consumer Credit Transaction Claim against Solar Mosaic LLC in a court having relevant jurisdiction seeking relief as to such claims for the purpose for making exclusively available for the satisfaction of the damages awarded to the Holders of a Consumer Credit Transaction Claims the proceeds of applicable Consumer Liability Insurance Policies. Holders of Consumer Credit Transaction Claims that hold claims that arise out of loans still held by Solar Mosaic LLC may seek additional injunctive and declaratory relief, as well as cancellation of the relevant loans, in the relevant Insurance Proceeds Recovery Actions. In no event shall the aggregate recoveries of any Holder of a Consumer Credit Transaction Claim, under the Plan, in an Insurance Proceeds Recovery Action, and/or otherwise, exceed the Allowed amount of such Holder's Consumer Credit Transaction Claim.

**1.94.** *"Intercompany Claim"* means any Claim, Cause of Action, or remedy held by or asserted against a Debtor by another Debtor.

**1.95.** *"Interests"* means, collectively, Equity Interests and Existing Intercompany Equity Interests.

**1.96.** *"Interim DIP Order"* means the Bankruptcy Court order authorizing and approving the Debtors' entry into the DIP Credit Agreement on an interim basis.

**1.97.** *"Lending Club License"* has the meaning set forth in Section 7.35.

**1.98.** *"Litigation Trust"* shall mean the trust established under this Plan and the Litigation Trust Agreement to hold legal and equitable title to the Litigation Trust Assets.

**1.99.** *"Litigation Trust Agreement"* shall mean the trust agreement in the form and substance reasonably acceptable to the Debtors, the Prepetition Agent, and the DIP Agent that, together with the terms of the Plan, establishes the Litigation Trust and governs the powers, duties, and responsibilities of the Plan Administrator as trustee for the Litigation Trust. The Litigation Trust Agreement shall be filed as part of the Plan Supplement.

**1.100.** *"Litigation Trust Assets"* shall consist of the following: (i) all Retained Causes of Action belonging to the Wind Down Debtors, including the proceeds related thereto, as determined by the Debtors in connection with the Independent Investigation; (ii) the Litigation Trust Cash Contribution; (iii) all assets recovered by the Plan Administrator on behalf of the Litigation Trust on or after the Effective Date through enforcement, resolution, settlement, collection, return, or otherwise; and (iv) any proceeds resulting from the Plan Administrator's investment of the Litigation Trust Assets on or after the Effective Date owned by the Wind Down Debtors on the Effective Date. For the avoidance of doubt, all Avoidance Actions that are not Retained Causes of Action (i.e. Retained Causes of Action purchased through the Sale Transaction or that vest in a Reorganized Debtor) belonging to the Wind Down Debtors shall not constitute Litigation Trust Assets.

**1.101.** "*Litigation Trust Beneficiary*" shall mean a Holder of a Litigation Trust Interest, whether individually or as agent on behalf of one or more other Entities, as the holder of an Allowed 5 or Class 6 Claim.

**1.102.** "*Litigation Trust Cash Contribution*" shall consist of Cash proceeds of at least $3,000,000, contributed to the Debtors by the Sponsor Payment and as funded pursuant to Section 7.34 of the Plan in order to fund the operations, investigations and the prosecution of Retained Causes of Action by the Litigation Trustee on behalf of the Litigation Trust.

**1.103.** "*Litigation Trust Distribution Proceeds*" shall mean all Cash realizable from the Litigation Trust Assets after the payment of, and reserving for, Litigation Trust Expenses in accordance with the Litigation Trust Agreement.

**1.104.** "*Litigation Trust Expenses*" shall mean all reasonable legal and other fees and expenses incurred by the Litigation Trustee on account of administration of the Litigation Trust, including, without limitation, reasonable attorneys' fees and expenses, insurance costs, taxes, escrow expenses and all other costs of administering the Litigation Trust in accordance with the Plan and the Litigation Trust Agreement.

**1.105.** "*Litigation Trust Interests*" shall mean the non-transferable interests in the Litigation Trust issued to the Litigation Trust Beneficiaries pursuant to this Plan and the Litigation Trust Agreement.

**1.106.** "*Litigation Trust Oversight Board*" shall mean the Oversight Board to be created on the Effective Date and to be comprised of three (3) members selected by the Creditors' Committee, with which the Litigation Trustee, in connection with the performance of its duties, must consult and cooperate, and which shall have the duties and the powers set forth in the Litigation Trust Agreement.

**1.107.** "*Litigation Trustee*" means the Person or Entity (or any successor thereto) means the Person or Entity designated by the Committee in consultation with the Debtors, the DIP Agent, and any successor subsequently appointed pursuant to the Litigation Trust Agreement.

**1.108.** "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.109.** "*Loan Ownership Database*" means the list of the identities and contact details of the current owners of all loans originated or arranged by the Debtors to be maintained by the Plan Administrator, to which the Plan Administrator may grant access to current and former borrower upon receipt of a Loan Ownership Information Request and compliance with the conditions set forth in the Plan Administration Agreement.

**1.110.** "*Loan Ownership Information Request*" means a request by a current or former borrower of the Debtors for access to relevant information in the Loan Ownership Database in order to ascertain the identity and contact details of the current owner of the loan made to such borrower by the Debtors or one its Financing Partners or ABS Vehicles.

**1.111.** "*Local Rules*" means the Bankruptcy Local Rules for the Southern District of Texas.

1.112. "*New Boards*" means the initial boards of the Reorganized Debtors.

1.113. "*New Money DIP Claims*" means all DIP Claims arising solely out of the New Money DIP Term Loan Facility (as defined in the Final DIP Order).

1.114. "*New OpCo*" means a newly-formed Entity, established in accordance with the steps set forth in the Restructuring Transactions Memorandum, that will be a direct subsidiary of Reorganized TopCo.

1.115. "*New Organizational Documents*" means the new Organizational Documents of the Reorganized Debtors, to be entered into on the Effective Date, including certificates of incorporation, limited liability company agreements, stockholders or shareholders agreements, operating agreements, equity subscription or purchase agreements, charters or by-laws.

1.116. "*Non-Debtor Releasing Party*" means any Releasing Party that is not a Debtor.

1.117. "*Organizational Documents*" means, with respect to any Person other than a natural person, the documents by which such Person was organized or formed (such as a certificate of incorporation, certificate of formation, certificate of limited partnership, or articles of organization) or which relate to the internal governance of such Person (such as by-laws or a partnership agreement, or an operating, limited liability company or members agreement).

1.118. "*Other Priority Claim*" means any Claim other than an Administrative Expense Claim or a Priority Tax Claim that is entitled to priority of payment as specified in section 507(a) of the Bankruptcy Code.

1.119. "*Other Secured Claim*" means any Secured Claim against a Debtor other than a DIP Claim or a Prepetition Secured Loan Claim.

1.120. "*Person*" has the meaning set forth in section 101(14) of the Bankruptcy Code and also means any individual, corporation, partnership, association, indenture trustee, limited liability company, cooperative, organization, joint stock company, joint venture, estate, fund, trust, unincorporated organization, Governmental Unit or any political subdivision thereof, or any other Entity or organization of whatever nature.

1.121. "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

1.122. "*Plan*" means this fourth amended joint chapter 11 plan proposed by the Debtors, including, without limitation, the exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.123. "*Plan Administrator*" means, the Person or Entity (or any successor thereto) means the Person or Entity designated by the Debtors in consultation with the DIP Agent, and in consultation with the Committee, who will have all the powers and authorities set forth in Section 7.19 of this Plan. The initial Plan Administrator shall be Olive Advisors LLC.

**1.124.** "*Plan Administrator Agreement*" means, if applicable, that certain agreement entered into no later than the Effective Date setting forth, among other things, the Plan Administrator's rights, powers, obligations, and compensation, all of which shall be consistent with the applicable provisions of the Plan and which, solely in the event of a Plan Equitization Transaction, shall be in form and substance satisfactory to the Debtors and the DIP Agent and the Prepetition Secured Agent, in consultation with the Committee.

**1.125.** "*Plan Documents*" means the documents, other than this Plan, to be executed, delivered, assumed, and/or performed in connection with the consummation of this Plan, including the documents to be included in the Plan Supplement and any and all exhibits to this Plan and the Disclosure Statement.

**1.126.** "*Plan Equitization Transaction*" means (a) conversion of the New Money DIP Claims (subject to any recoveries pursuant to Section 7.34) into a pro rata share of the Exit Term Loans, and (b) the equitization of (1) 100% of the Second Out DIP Claims, and (2) 100% of the Prepetition First Out Claims into their respective allocable portion of 100% of Reorganized Common Equity.

**1.127.** "*Plan Supplement*" means any compilation of documents and forms of documents (including term sheets), agreements, schedules, and exhibits to the Plan, including (i) the New Organizational Documents, (ii) the Schedule of Retained Causes of Action, (iii) the Restructuring Transactions Memorandum, (iv) the Litigation Trust Agreement, (v) the Assumed Contracts List, (vi) the Plan Administrator Agreement, (vii) to the extent known, the identity of the known members of the New Board and the nature and compensation for any director who is an "insider" under the Bankruptcy Code, and (viii) any and all other documents necessary to effectuate the Restructuring Transactions or that are contemplated by the Plan subject to this Agreement, which shall be filed by the Debtors on or before the Plan Supplement Deadline, and additional documents, if any, filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

**1.128.** "*Plan Supplement Deadline*" means the deadline established by the Bankruptcy Court for the filing of the Plan Supplement.

**1.129.** "*Post-Effective Debtors*" means the Reorganized Debtors and, if applicable, the Wind Down Debtors.

**1.130.** "*Pre-Effective Date PA Duties*" has the meaning set forth in Section 7.20(a).

**1.131.** "*Prepetition First Out Lenders*" shall have the meaning assigned to the term "First Out Lenders" in the AAL.

**1.132.** "*Prepetition Last Out Lenders*" shall have the meaning assigned to the term "Last Out Lenders" in the AAL.

**1.133.** "*Prepetition Secured Credit Agreement*" means that certain Credit Agreement, dated as of June 22, 2021, among Solar Mosaic LLC, the Prepetition Secured Agent, and the Prepetition Secured Lenders from time to time party thereto, as amended, restated, amended or restated, supplemented, or otherwise modified from time to time.

**1.134.** "***Prepetition Secured Agent***" means Forbright Bank (f/k/a Congressional Bank), in its capacity as administrative agent for the Prepetition Secured Lenders.

**1.135.** "***Prepetition Secured Lenders***" means beneficial holders of, or investment advisors, sub-advisors or managers of discretionary funds, accounts or sub-accounts that beneficially hold, Prepetition Secured Loan Claims.

**1.136.** "***Prepetition First Out Claims***" means any Prepetition Secured Loan Claim held by a Prepetition First Out Lender.

**1.137.** "***Prepetition Last Out Claims***" means any Prepetition Secured Loan Claim held by a Prepetition Last Out Lender.

**1.138.** "***Prepetition Secured Loan Claims***" means any Claim on account of Prepetition Secured Loans arising under or pursuant to the Prepetition Secured Credit Agreement or the other Prepetition Secured Loan Documents.

**1.139.** "***Prepetition Secured Loan Documents***" means the "Loan Documents" as defined in the Prepetition Secured Credit Agreement.

**1.140.** "***Prepetition Secured Loans***" means the term loans arising under or pursuant to the Prepetition Secured Credit Agreement.

**1.141.** "***Priority Non-Tax Claim***" means any Claim, other than a DIP Claim, an Administrative Expense Claim, a Fee Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

**1.142.** "***Priority Tax Claim***" means any Claim of a Governmental Unit of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.143.** "***Priority Tax Claims Bar Date***" means the date that is 180 days after the Petition Date.

**1.144.** "***Professional Fee Claim***" means any Claim by a Professional Person for compensation for services rendered or reimbursement of expenses incurred by such Professional Person on or after the Petition Date through and including the Confirmation Date under sections 328, 330, 331, 503(b)(2), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (including transaction and success fees) to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional Person's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

**1.145.** "***Professional Fee Escrow Account***" means an account funded by the Debtors with Cash no later than the Effective Date in the amount equal to the Professional Fee Escrow Amount.

**1.146.** "***Professional Fee Escrow Amount***" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses the Professional Persons have incurred or will

incur in rendering services in connection with the Chapter 11 Cases prior to and as of the Effective Date, which shall be estimated pursuant to the method set forth in Article II of the Plan.

1.147. "*Professional Person(s)*" means all Persons (a) retained by order of the Bankruptcy Court in connection with the Chapter 11 Cases, pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code, excluding any ordinary course professionals retained pursuant to an order of the Bankruptcy Court, or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.148. "*Proof of Claim*" means a proof of Claim filed by a Holder of a Claim against the Debtors in the Chapter 11 Cases.

1.149. "*Proof of Interest*" means a proof of Interest filed by a Holder of any Interests in the Debtors the Chapter 11 Cases.

1.150. "*Related Funds*" means, with respect to any Person, any fund, account or investment vehicle that is controlled, advised or managed by (a) such Person, (b) an Affiliate of such Person, or (c) the same investment manager, advisor or subadvisor that controls, advises or manages such Person or an Affiliate of such investment manager, advisor or subadvisor.

1.151. "*Related Parties*" means collectively with respect to any Person or Entity, each of, and in each case solely in its capacity, such Person's or Entity's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory or subcommittee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, and any Person or Entity claiming by or through any of them, including such Related Parties' respective heirs, executors, estates, servants, and nominees, provided, that, that the Warehouses shall not constitute Related Parties of the Debtors; provided, further, that, that the ABS Released Parties shall not constitute Related Parties of the Debtors; provided, further, that no party shall constitute a Related Party solely due to being an assignee or transferee of a loan originated by the Debtor Solar Mosaic LLC.

1.152. "*Release Objection*" means an objection to the releases set forth in Article XII of this Plan filed by any Holders of Claims in Classes 3, 4, 5, 6 and 7 prior to the deadline to object to confirmation of the Plan.

1.153. "*Release to ABS Released Parties*" has the meaning set forth in Section 12.9.

1.154. "*Released Parties*" means, collectively, and each solely in its capacity as such: (a) the Reorganized Debtors, the Debtors, and their Estates; (b) the Plan Administrator; (c) the Litigation Trustee; (d) the DIP Agent and the DIP Lenders; (e) the Prepetition Secured Agent; (f) the Prepetition Secured Lenders that are DIP Lenders, in their capacity as Prepetition Secured Lenders; (g) the Creditors' Committee (if any) and each of its members solely in their capacity as members of the Creditors' Committee; (h) the Sponsors (in their and their Related Parties' and Affiliates' capacities as equity holders, directors or officers of the Debtors, and lenders to the

Debtors and/or their affiliates (including without limitation as holders of Subordinated Notes Claims, holders of Prepetition Last Out Claims, and lenders to Mosaic Funding X LLC), as applicable) (i) the Warehouses and the Financing Partners and (1) each such parties' lenders thereto and (2) Wilmington Trust (other than with respect to Wilmington Trust as an ABS Party), and (j) each of such parties' Affiliates and Related Parties; *provided* that no Person or Entity shall be a Released Party unless they are also a Releasing Party.

1.155. "*Releasing Parties*" means, collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and Post-Effective Debtors; (b) the Plan Administrator; (c) the Litigation Trustee; (d) the DIP Agent and the DIP Lenders; (e) the Prepetition Secured Agent; (f) the Prepetition Secured Lenders; (g) the Creditors' Committee and each of its members solely in their capacity as members of the Creditor's Committee; (h) the Sponsors (i) the Warehouses and the Financing Partners and (1) each such parties' lenders thereto and (2) Wilmington Trust (other than with respect to Wilmington Trust as an ABS Party); and (j) all Holders of Claims that (i) vote to accept or reject the Plan and do not timely make the Third Party Release Opt-Out Election by checking the relevant box on their Ballots or submitting a Third Party Release Opt-Out Form, thereby indicating such Holders' decision not to participate in the releases set forth in Article XII of the Plan; (ii) are deemed to accept or reject the Plan and either do not timely make the Third Party Release Opt-Out Election by submitting the Third Party Release Opt-Out Form or do not file a Release Objection; (iii) do not vote to accept or reject the Plan, and either do not timely make the Third Party Release Opt-Out Election by submitting the Third Party Release Opt-Out Form or do not file a Release Objection; and (iv) all unimpaired creditors of the Debtors who either do not timely make the Third Party Release Opt-Out Election by submitting the Third Party Release Opt-Out Form or file a Release Objection.

1.156. "*Reorganized Common Equity*" means the common Equity Interests of Reorganized TopCo authorized under the New Organizational Documents of the Reorganized Debtors and issued and/or distributed on the Effective Date in accordance with this Plan.

1.157. "*Reorganized Debtor(s)*" means Reorganized TopCo.

1.158. "*Reorganized TopCo*" means on or after the Effective Date, TopCo, as reorganized pursuant to and under the Plan Equitization Transaction, or any successors thereto, by merger, consolidation, reorganization or otherwise.

1.159. "*Required Prepetition Secured Lenders*" means the "Required Lenders" as defined in the Prepetition Secured Credit Agreement, subject to the terms of the AAL.

1.160. "*Required DIP Lenders*" means the "Required Lenders" as defined in the DIP Credit Agreement.

1.161. "*Restructuring Transactions*" means either (a) the Plan Equitization Transaction or (b) the Sale Transaction, or (c) both the Plan Equitization Transaction and the Sale Transaction, as the context requires.

1.162. "*Restructuring Transactions Memorandum*" means, solely in the event of the Plan Equitization Transaction, a document to be included in the Plan Supplement that will set

forth the material components of the Restructuring Transactions, including a summary of any transaction steps necessary to complete the Plan.

**1.163.** "*Retained Causes of Action*" means all Causes of Actions, rights and claims described in the Schedule of Retained Causes of Action filed with the Plan Supplement.

**1.164.** "*Sale Documents*" means one or more asset purchase agreements, other agreements, instruments, pleadings, orders and related documents, including, without limitation, the applicable Assumed Contracts List, pursuant to which the Debtors implement and consummate any Sale Transaction.

**1.165.** "*Sale Order*" means the order entered by the Bankruptcy Court authorizing and approving the Sale Transaction.

**1.166.** "*Sale Proceeds*" means all proceeds from consummation of a Sale Transaction that are distributable or payable to the Estates, which proceeds shall consist of Cash.

**1.167.** "*Sale Process*" means the sale process conducted in accordance with the Bidding Procedures Order.

**1.168.** "*Sale Toggle Event*" means entry into one or more qualifying asset purchase agreements or other definitive document to consummate a Sale Transaction, solely to the extent entered into in connection with a Sufficient Bid and in compliance with the Bidding Procedures Order.

**1.169.** "*Sale Transaction*" means a sale of all or substantially all of the remaining assets of the Debtors, which may be through one or more sales of the assets or Equity Interests of the Debtors, as further set forth herein, pursuant to sections 363 or 1129 of the Bankruptcy Code and the Bidding Procedures, solely if a Sufficient Bid is received by the Debtors.

**1.170.** "*Schedule of Retained Causes of Action*" means the schedule of Retained Causes of Action, including any Retained Causes of Action that shall vest in one or more of the Post-Effective Debtors or Litigation Trust, as applicable, on the Effective Date, which will be contained in the Plan Supplement.

**1.171.** "*Second Out DIP Claims*" means all DIP Claims arising solely of the Second Out DIP Term Loan Facility (as defined in the Final DIP Order).

**1.172.** "*Secured Claim*" means a Claim: (a) that is secured by a valid, perfected and enforceable Lien on Collateral, to the extent of the value of the Claim Holder's interest in such Collateral as of the Confirmation Date; (b) to the extent that the Holder thereof has a valid right of setoff pursuant to section 553 of the Bankruptcy Code; or (c) otherwise Allowed pursuant to the Plan or order of the Bankruptcy Court as a secured claim.

**1.173.** "*Securities Act*" means the Securities Act of 1933, as amended.

**1.174.** "*Specified Released Parties*" has the meaning set forth in <u>Section 12.9.</u>

**1.175.** "***Specified Releasing Parties***" has the meaning set forth in <u>Section 12.9</u>.

**1.176.** ***Sponsors*"** means, collectively*,* the Affinity Sponsors and the Warburg Sponsors.

**1.177.** "***Subordinated Claim***" means any prepetition Claim that is subject to subordination pursuant to sections 510(b)–(c) of the Bankruptcy Code or otherwise.

**1.178.** "***Subordinated Claims Distribution***" means, to the extent the Restructuring Transactions are consummated pursuant to a Sale Transaction, an amount equal to (a) the aggregate net Cash Sale Proceeds (if any) allocable to any particular Debtor, less (b) the aggregate amount required to pay in full in Cash all Allowed Claims that are senior to Subordinated Claims in priority of payment under the Bankruptcy Code (after taking into account all structurally senior Allowed Claims) (including, to the extent applicable, the satisfaction in full of the DIP Claims, the Prepetition Secured Loan Claims, including any interest, fees, or premiums payable thereon) or applicable nonbankruptcy law.

**1.179.** "***Subordinated Notes***" means (1) that certain Subordinated Note, dated as of June 11, 2024 (as amended September 25, 2024), by and among Solar Mosaic LLC and SBOC CO. LLC, for an initial loan of $7,500,000, and (ii) that certain Subordinated Note, dated as of June 11, 2024 (as amended October 9, 2024), by and among Solar Mosaic LLC and SMECL CO. LLC for an initial loan of $5,625,000.

**1.180.** "***Successful Bidder***" means any Entity or Entities whose bid(s) for all or substantially all of the Debtors' assets pursuant to a Sufficient Bid as the highest and otherwise best bid for such assets or equity, respectively, pursuant to a Sale Order. For the avoidance of doubt, the Successful Bidder may be more than one Entity, submitting one or more bids, and if applicable, use of the term "Successful Bidder" herein may be read as "Successful Bidders." Where a Successful Bidder has consent rights (or is referenced) under the Plan, such consent rights (or reference) only apply to the extent such consent right (or reference) relates to the respective Successful Bidder's Sale Transaction.

**1.181.** "***Sufficient Bid***" means a qualified bid for a Sale Transaction, or series of qualified bids (so long as each such qualified bid does not contemplate a sale of any assets covered by any such other qualified bid) for a Sale Transaction aggregated together, that the Debtors, in consultation with the DIP Agent and the Prepetition Secured Agent, determine have satisfied, among other things, the following conditions: (a) be a good faith, *bona fide*, irrevocable bid, (b) be in writing and executed by a duly authorized representative of the bidder, (c) unless otherwise agreed by the DIP Agent and the Prepetition Secured Agent in their applicable sole discretion, provide for receipt by the Debtors of aggregate Cash consideration sufficient for the payment in full in Cash at the closing of the Sale Transaction contemplated by such qualified bid(s) of: (1) all of the DIP Claims, and (2) all of the Prepetition First Out Claims, (d) be accompanied by a Cash deposit equal to at least 10% of the purchase price, (e) include written evidence acceptable to the Debtors demonstrating appropriate corporate or similar governance authorization of the bidder(s) to consummate the Sale Transaction contemplated by the proposed bid(s), (f) include written evidence that demonstrates that the bidder has the necessary financial ability to timely close the Sale Transaction contemplated by the proposed qualified bid(s) (including written evidence of the bidder's internal financial resources and ability to finance its

bid with Cash on hand, available lines of credit, uncalled capital commitments or otherwise available funds), (g) not contain conditions or contingencies of any kind, relating to financing, internal approvals, due diligence, third party consents or approvals (other than governmental or regulatory consents that may be required to consummate the proposed Sale Transaction, including any antitrust approval that may be required under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, which shall be described in the bid together with evidence satisfactory to the Debtors of the ability to obtain such approvals or consents as soon as reasonably practicable), the satisfaction or achievement of any financial targets, thresholds or metrics, the absence of any material adverse effect since a date earlier than the date the bid was submitted, or any other conditions or contingencies other than conditions to closing that are customary for sales to non-"stalking horse" bidders in sales of assets under section 363 of the Bankruptcy Code (but, for the avoidance of doubt, excluding any of the conditions set forth in this clause (g)), (h) be reasonably likely to be consummated (if selected as the winning bid) promptly following entry of the Sale Order or Confirmation Order, as applicable, or otherwise within a time frame acceptable to the Debtors, the DIP Agent and the Prepetition Secured Agent, and (j) in the case of a series of qualified bids (so long as each such qualified bid does not contemplate a sale of any assets covered by any such other qualified bid) for a Sale Transaction aggregated together, each qualified bid in such series is conditioned on the consummation of the other qualified bid(s) in such series at substantially the same time. Notwithstanding the foregoing, Forbright Bank, in its capacity as the DIP Agent and the Prepetition Secured Agent, is automatically deemed a qualified bidder and may seek to credit bid, subject to the AAL, all or a portion of (x) the DIP Claims and (y) the Prepetition First Out Claims, and any such credit bid shall be deemed a qualified bid without otherwise complying with the conditions set forth in clauses (a) through (j), including, without limitation, the requirement that qualified bids be accompanied by a cash deposit.

1.182. "*Supplemental Assumed Contracts List*" has the meaning set forth in Section 10.2 of this Plan.

1.183. "*Third-Party Release*" means the third-party release set forth in Article XII of this Plan.

1.184. "*Third-Party Release Opt-Out Election*" means the election to be made by Holders of Claims by checking the relevant box on their Ballots or submitting a Third Party Release Opt-Out Form.

1.185. "*Third-Party Release Opt-Out Form*" means the form to be submitted by Holders of Claims that do not receive or submit Ballots in accordance with the Solicitation Procedures Order.

1.186. "*TopCo*" means Mosaic Sustainable Finance Corporation.

1.187. "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

1.188. "**U.S. Bank**" means U.S. Bank Trust National Association; U.S. Bank Trust Company, National Association; and U.S. Bank National Association, together with their

subsidiaries and affiliates, in their respective roles as owner trustee, administrative agent, securities intermediary and other related roles under the transaction documents governing the CSS HIL 2024-1 Trust including, without limitation, that certain Amended and Restated Trust Agreement, dated as of April 30, 2024, by and among CSS HIL 2024 Holdings, LLC, as settlor and as beneficiary, and U.S. Bank Trust National Association, as owner trustee; that certain Loan and Security Agreement, dated as of April 30 by and among the CSS HIL 2024-1 Trust, as borrower, the Class A Lenders, Class B Lenders, Class C Lenders, Class D Lenders and Class E Lenders, described therein and U.S. Bank Trust National Association, as administrative agent; and the other transaction documents relating thereto.

**1.189.** "*U.S. Trustee*" means the United States Trustee for Region 2.

**1.190.** "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

**1.191.** *"Warburg Sponsors"* means Warburg Pincus Energy Partners, L.P., Warburg Pincus Private Equity XII, L.P., Warburg Pincus Private Equity XII-B, L.P., Warburg Pincus Private Equity XII-D, L.P., Warburg Pincus Private Equity XII-E, L.P., WP XII Partners, L.P., Warburg Pincus XII Partners, L.P., SMECL Co. LLC, Warburg Pincus LLC, Warburg Pincus Energy, L.P., Warburg Pincus Energy-B, L.P, WP Energy Partners, L.P., and WP XII Partners, L.P.

**1.192.** *"Warehouses"* means the following non-debtor subsidiaries of Debtor Mosaic Funding Holdings LLC: Mosaic Funding I LLC, Mosaic Funding II LLC, Mosaic Funding IV LLC, Mosaic Funding V LLC, Mosaic Funding VI LLC, Mosaic Funding VII LLC, Mosaic Funding VII LLC, Mosaic Funding IX LLC, Mosaic Funding X LLC, and Mosaic Funding XI LLC.

**1.193.** "*Wilmington Trust*" means Wilmington Trust, National Association, together with its subsidiaries and affiliates, in its capacities, as applicable, as indenture trustee, owner trustee, underlying trustee, trustee, account bank, collateral agent, securities intermediary, paying agent, securities registrar or otherwise in relation to the transactions listed on Exhibit A of the Second Amended Notice of Appearance and Request for Service of Papers [ECF No. 552].

**1.194.** *"Wind Down"* means the administration and wind down of any remaining affairs of the Wind Down Debtors, as well as the dissolution and liquidation of the Wind Down Debtors' Estates after the Effective Date.

**1.195.** "*Wind Down Account*" means an account funded by the Debtors with Cash no later than the Effective Date in the amount consistent with the Wind Down Budget.

**1.196.** "*Wind Down Amount*" means, in the event of a Sale Transaction, an amount sufficient to fund (a) the payment in full of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims to the extent not otherwise assumed under any Sale Documents, and (b) the costs to wind down the Estates and Chapter 11 Cases in accordance with the Wind Down Budget, which amount shall be funded from the Sale Proceeds.

1.197. "***Wind Down Budget***" means a budget for the reasonable activities and expenses to be incurred in winding down the Chapter 11 Cases as set forth in the Plan Supplement.

1.198. "***Wind Down Co***" means an Entity that, in the discretion of Debtors, may be established on the Effective Date for the benefit of holders of Claims against the Debtors (which Entity may be a liquidating trust or a Wind Down Debtor) in connection with the distribution of assets of the Debtors (including proceeds from the Sale Transaction) that did not otherwise vest in the Reorganized Debtors (as determined by the Debtors).

1.199. "***Wind Down Debtors***" means, on or after the Effective Date, the Debtors that are not Reorganized Debtors pursuant to and under a Plan Equitization Transaction.

## B.     Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. The use of "include" or "including" is without limitation, whether stated or not. Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan. Any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented. References to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Equity Interests," "Holders of Interests," "Disputed Interests," and the like, as applicable. Subject to the provisions of any contracts, certificates or articles of incorporation, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns. Any reference to directors or board of directors includes managers, managing members or any similar governing body, as the context requires, and references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable limited liability company Laws.

## C.     Appendices and Plan Documents.

All Plan Documents and appendices to this Plan are incorporated into this Plan by reference and are a part of this Plan as if set forth in full herein. The documents contained in the exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. Holders of Claims and Interests may inspect a copy of the Plan Documents, once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or

via the Claims Agent's website at https://cases.ra.kroll.com/Mosaic/, or obtain a copy of any of the Plan Documents by a written request sent to the Claims Agent at the following address:

Mosaic Sustainable Finance Corporation Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

## ARTICLE II.
## CERTAIN INTERCREDITOR ISSUES

**2.1.**     *Settlement of Certain Intercreditor Issues.*

The treatment of Claims and Interests under this Plan represents, among other things, the settlement and compromise of certain potential inter-creditor disputes.

**2.2.**     *Formation of Debtor Groups for Convenience Purposes.*

The Plan groups the Debtors together solely for purposes of describing treatment under the Plan, confirmation of the Plan and making distributions under this Plan in respect of Claims against and Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, nor cause the transfer of any assets or the assumption of any liabilities; and, except as otherwise provided by or permitted in the Plan, all Debtors shall continue to exist as separate legal Entities.

**2.3.**     *Intercompany Claims.*

(a)     Intercompany Claims.

(i)     Plan Equitization Transaction.     In the event of the Plan Equitization Transaction, on or after the Effective Date, any and all Intercompany Claims between and among Topco and any of its direct or indirect subsidiaries shall, at the option of the Debtors, the Prepetition Secured Agent, and the DIP Agent, either be (i) extinguished, canceled and/or discharged on the Effective Date or (ii) reinstated and otherwise survive the Debtors' restructuring by virtue of such Intercompany Claims being left unimpaired.  To the extent any such Intercompany Claim is reinstated, or otherwise adjusted (including by contribution, distribution in exchange for new debt or equity, or otherwise), paid or continued as of the Effective Date, any such transaction may be effected on or after the Effective Date without any further action by the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(ii)     <u>Sale Transaction</u>.  In the event of a Sale Transaction, any and all Intercompany Claims between and among any Debtors whose equity is not purchased by the Successful Bidder shall, at the option of the Debtors, either be (i) extinguished, canceled and/or discharged on the Effective Date or (ii) reinstated and otherwise survive the Debtors' restructuring by virtue of such Intercompany Claims being left unimpaired.  To the extent any such Intercompany Claim is reinstated, or otherwise adjusted (including by contribution, distribution in exchange for new debt or equity, or otherwise), paid or continued as of the Effective Date, any such transaction may be effected on or after the Effective Date without any further action by the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

## ARTICLE III.
## DIP CLAIMS, ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS

The Plan constitutes a joint plan of reorganization for all of the Debtors.  All Claims and Interests, except DIP Claims, Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims, are placed in the Classes set forth in <u>Article IV</u>.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, DIP Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims have not been classified, and the Holders thereof are not entitled to vote on this Plan.

A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code.  However, a Claim or Interest is placed in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest and has not been paid, released or otherwise settled prior to the Effective Date.

### 3.1.     *DIP Claims.*

On the Effective Date, the DIP Claims shall be Allowed in the full amount outstanding under the DIP Credit Agreement and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any Person. If a Sale Transaction is consummated, in full satisfaction, settlement, release and discharge of the Allowed DIP Claims, on the Effective Date, all Allowed DIP Claims shall be indefeasibly paid in full in Cash from Sale Proceeds. In the event the Restructuring Transactions are consummated through the Plan Equitization Transaction, in satisfaction, settlement, release and discharge of Allowed DIP Claims, each Holder of an Allowed DIP Claim shall receive:

(a)     On account of its New Money DIP Claim, (1) a pro rata share, based on such Holder's ratable share of the New Money DIP Claim, of the Exit Term Loans, (2) proceeds from the Lending Club Transaction, and (3) its pro rata share of the Distributable Assets Proceeds in accordance with the priorities set forth in Section 7.34, in each case up to the Allowed Amount of the New Money DIP Claims.

(b)     On account of its Second Out DIP Claim, a pro rata share of the Reorganized Common Equity shall be issued to Holders of Allowed DIP Claims.[3]

To the extent all Allowed DIP Claims are paid in full, all Liens and security interests granted to secure such obligations, whether in the Chapter 11 Cases or otherwise, shall be terminated and of no further force or effect.

### 3.2.    *Administrative Expense Claims.*

(a)     Time for Filing Administrative Expense Claims.

The Holder of an Administrative Expense Claim, other than DIP Claims, Fee Claims, Intercompany Claims, or U.S. Trustee Fees that accrued on or before the Effective Date other than in the ordinary course of business must file with the Bankruptcy Court and serve on the Reorganized Debtors, the Wind Down Debtors (or Wind Down Co), and the Plan Administrator (if appointed) proof of such Administrative Expense Claim no later than the Administrative Bar Date.  Such proof of Administrative Expense Claim must include at a minimum: (1) the name of the applicable Debtor that is purported to be liable for the Administrative Expense Claim, and if the Administrative Expense Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (2) the name of the Holder of the Administrative Expense Claim; (3) the asserted amount of the Administrative Expense Claim; (4) the basis of the Administrative Expense Claim; and (5) supporting documentation for the Administrative Expense Claim.  **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND DISCHARGED.  IF FOR ANY REASON ANY SUCH ADMINISTRATIVE EXPENSE CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.**

The Debtors, the Wind Down Debtors or the Plan Administrator, as applicable, may settle Administrative Expense Claims in the ordinary course of business without further Bankruptcy Court approval.   The Debtors, the Wind Down Debtors, or the Plan Administrator, as applicable, may also choose to object to any Administrative Expense Claim no later than the Claims Objection Deadline, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.   Unless the

---

[3]     In connection with the treatment of Holders of Prepetition First Out Claims as described in Section 5.3 of the Plan, Holders of Second Out DIP Claims and Prepetition First Out Claims will collectively receive a pro rata share of 100% of the Reorganized Common Equity.

Debtors, the Wind Down Debtors, or the Plan Administrator, as applicable (or other party with standing) object to a timely-filed and properly served Administrative Expense Claim, such Administrative Expense Claim will be deemed Allowed in the amount requested after expiration of the Claims Objection Deadline (as may be extended). In the event that the Debtors, the Wind Down Debtors, or the Plan Administrator object(s) to an Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Expense Claim should be Allowed and, if so, in what amount.

(b) <u>Treatment of Administrative Expense Claims</u>.

Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to a different treatment, on the applicable Distribution Date, or as soon thereafter as is reasonably practicable, the Holder of such Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Claim or such other treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that, to the extent consistent with the DIP Budget, Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by any of the Debtors, as debtors-in-possession, shall be paid in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such liabilities; <u>provided</u>, <u>further</u>, that any Allowed Administrative Expense Claim that has been assumed by a Successful Bidder under the applicable Sale Documents shall not be an obligation of the Debtors and shall not be entitled to any recovery from the Estates under the Plan.

**3.3.** *Fee Claims.*

(a) <u>Time for Filing Fee Claims</u>.

Any Professional Person seeking allowance of a Fee Claim shall file with the Bankruptcy Court its final application for allowance of compensation for services rendered and reimbursement of expenses incurred on and prior to the Effective Date and in connection with the preparation and prosecution of such final application no later than forty-five (45) calendar days after the Effective Date or such other date as established by the Bankruptcy Court. Objections to such Fee Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order.

(b) <u>Treatment of Fee Claims</u>.

The Bankruptcy Court shall determine the Allowed amounts of Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and the Confirmation Order. The Wind Down Debtors or the Plan Administrator, as applicable, shall pay Professional Fee Claims in Cash to such Professional Persons in the amount the Bankruptcy Court allows from funds held in the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court; <u>provided</u> that the Debtors' and the Wind Down Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account. To the extent that funds

held in the Professional Fee Escrow Account are insufficient to satisfy the Allowed amount of Professional Fee Claims owing to the Professional Persons, the Wind Down Debtors or the Plan Administrator, as applicable, shall pay such amounts within ten (10) Business Days after entry of the order approving such Professional Fee Claims.

No later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash on hand of the Debtors equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professional Persons and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full in Cash to the Professional Persons pursuant to one or more orders of the Bankruptcy Court. No Liens, Claims, or Interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. No funds held in the Professional Fee Escrow Account shall be property of the Estates of the Debtors, the Post-Effective Debtors, or the Plan Administrator, as applicable. Notwithstanding the foregoing sentence, funding of the Professional Fee Escrow Account will not be reported as a disbursement from the Estates, and disbursements from the Professional Fee Escrow Account on account of payment of Allowed Professional Fee Claims will be reported as disbursements from the Estates on the relevant monthly operating report(s). When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full in Cash to the Professional Persons pursuant to one or more orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall be remitted to the Wind Down Debtors or the Plan Administrator, as applicable, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity. Any further disbursements of such funds shall be reported in accordance with the Bankruptcy Rules.

The Professional Persons shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors (which estimate may include a cushion to cover unexpected or unknown fees) before and as of the Effective Date projected to be outstanding as of the anticipated Effective Date, and shall deliver such estimate no later than three (3) Business Days prior to the anticipated Effective Date. For the avoidance of doubt, no such estimate shall be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of a Professional Person's final request for payment of Professional Fee Claims filed with the Bankruptcy Court, and such Professional Persons are not bound to any extent by the estimates. If a Professional Person does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional Person for inclusion in the Professional Fee Escrow Amount. The total aggregate amount so estimated to be outstanding as of the anticipated Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account; provided that the Wind Down Debtors shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

Following the Effective Date, the Wind Down Debtors or Plan Administrator, as applicable, shall have authority with respect to matters related to Professional Fee Claim requests by Professional Persons, if any, acting at their direction in accordance with the terms of the Plan.

**3.4.**     *Priority Tax Claims.*

(a)     Time for Filing Priority Tax Claims.

The Holder of a Priority Tax Claim must file with the Bankruptcy Court and serve on the Post-Effective Debtors, the Plan Administrator (if appointed), the Claims Agent, and the U.S. Trustee, proof of such Priority Tax Claim by the Priority Tax Claims Bar Date. Such proof of Priority Tax Claim must include at a minimum: (1) the name of the applicable Debtor that is purported to be liable for the Priority Tax Claim and if the Priority Tax Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (2) the name of the Holder of the Priority Tax Claim; (3) the asserted amount of the Priority Tax Claim; (4) the basis of the Priority Tax Claim; and (5) supporting documentation for the Priority Tax Claim. **FAILURE TO FILE AND SERVE SUCH PROOF OF PRIORITY TAX CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND DISCHARGED. IF FOR ANY REASON ANY SUCH PRIORITY TAX CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.**

(b)     Treatment of Priority Tax Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in consultation with the Prepetition Secured Agent and DIP Agent, each Holder of an Allowed Priority Tax Claim shall receive, in exchange for full and final satisfaction, settlement, release, and the discharge of each Allowed Priority Tax Claim, either: (a) on the applicable Distribution Date, or as soon thereafter as is reasonably practicable, Cash in an amount equal to such Claim; or (b) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the Holder of such Priority Tax Claim may be entitled calculated in accordance with section 511 of the Bankruptcy Code); provided that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as they become due; provided, further, that (i) in the event of a Plan Equitization Transaction, notwithstanding any provision of the Plan to the contrary, any Claim on account of a "use tax" assessed or assessable under applicable state law shall be assumed by and reinstated against the applicable Reorganized Debtor and (ii) in the event of a Sale Transaction, any Allowed Priority Tax Claim that has been expressly assumed by a Successful Bidder under the Sale Documents shall not be an obligation of the Debtors. On the Effective Date, any Liens securing any Allowed Priority Tax Claims shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of any Person.

**3.5.**     *U.S. Trustee Fees and Related Reporting Obligations.*

All U.S. Trustee Fees that are due and owing as of the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due. After the Effective Date, the Debtors,

the Wind Down Debtors, and/or the Plan Administrator (if appointed), as applicable, shall file with the Bankruptcy Court separate reports when they become due. After the Effective Date, the Debtors, Wind Down Debtors, and/or the Plan Administrator (if appointed), as applicable, shall pay any and all applicable U.S. Trustee Fees in full in Cash when due and payable. The Debtors, the Wind Down Debtors, and/or the Plan Administrator (if appointed), as applicable, shall remain obligated to pay any applicable U.S. Trustee Fees until the earliest of the closure, dismissal, or conversion to a case under Chapter 7 of the Bankruptcy Code of the case of that particular Debtor for whom the Debtors, the Wind Down Debtors, and/or the Plan Administrator (if appointed), as applicable, is responsible. The U.S. Trustee shall not be treated as providing any release under the Plan. U.S. Trustee Fees are Allowed. The U.S. Trustee shall not be required to file any Proof of Claim or any request for administrative expense for U.S. Trustee Fees. The provisions of this paragraph shall control notwithstanding any other provision(s) in the Plan to the contrary.

## ARTICLE IV.
## CLASSIFICATION OF CLAIMS AND INTERESTS

### 4.1. *Classification of Claims and Interests.*

The following table designates the Classes of Claims against and Interests in the Debtors, and specifies which Classes are: (a) impaired or unimpaired by this Plan; (b) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code; or (c) deemed to accept or reject this Plan.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | No | No (deemed to accept) |
| Class 2 | Other Secured Claims | No | No (deemed to accept) |
| Class 3 | Prepetition First Out Claims | Yes | Yes |
| Class 4 | Prepetition Last Out Claims | Yes | Yes |
| Class 5 | General Unsecured Claims | Yes | Yes |
| Class 6 | Consumer Credit Transaction Claims | Yes | Yes |
| Class 7 | Subordinated Claims | Yes | Yes |
| Class 8 | Existing TopCo Equity Interests | Yes | No (deemed to reject) |
| Class 9 | Existing Intercompany Equity Interests | Yes | No (deemed to reject) |

The Plan constitutes a separate chapter 11 plan for each Debtor. Except for the Claims addressed in Article III above (or as otherwise set forth herein), all Claims and Interests are placed in Classes for each of the applicable Debtors.

The Plan consolidates certain Claims against all Debtors solely for purposes of voting and confirmation. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Expense Claims, DIP Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims, as described in Article III.

If a controversy arises regarding whether any Claim is properly classified under the Plan for purposes of voting, the Bankruptcy Court shall, upon proper motion and notice, determine

such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the Holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

**4.2.  *Unimpaired Classes of Claims.***

The following Classes of Claims are unimpaired and, therefore, deemed to have accepted this Plan and are not entitled to vote on this Plan under section 1126(f) of the Bankruptcy Code:

(a)     Class 1: Class 1 consists of all Priority Non-Tax Claims.

(b)     Class 2: Class 2 consists of all Other Secured Claims.

**4.3.  *Impaired Classes of Claims.***

The following Classes of Claims are impaired and entitled to vote on this Plan:

(a)     Class 3: Class 3 consists of all Prepetition First Out Claims.

(b)     Class 4:  Class 4 consists of all Prepetition Last Out Claims.

(c)     Class 5: Class 5 consists of all General Unsecured Claims.

(d)     Class 6: Class 6 consists of all Consumer Credit Transaction Claims.

(e)     Class 7 Class 7 consists of all Subordinated Claims.

The following Classes of Claims are deemed impaired and not entitled to vote on this Plan:

(a)     Class 8: Class 8 consists of all Existing TopCo Equity Interests.

(b)     Class 9: Class 9 consists of all Existing Intercompany Equity Interests.

**4.4.  *Separate Classification of Other Secured Claims.***

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on Collateral different than that securing any additional Other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of receiving distributions under this Plan.

# ARTICLE V.
# TREATMENT OF CLAIMS AND INTERESTS

### 5.1. *Priority Non-Tax Claims (Class 1).*

(a)     Treatment: The legal, equitable and contractual rights of the Holders of Allowed Priority Non-Tax Claims are unaltered by the Plan.  In full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Priority Non-Tax Claim, except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a lesser treatment, on the applicable Distribution Date, each Holder of an Allowed Priority Non-Tax Claim shall receive (at the election of the Debtors in consultation with the Prepetition Secured Agent and DIP Agent): (i) Cash in an amount equal to such Allowed Claim; or (ii) such other treatment that will render such Allowed Priority Non-Tax Claim unimpaired pursuant to section 1124 of the Bankruptcy Code.  In the event of a Sale Transaction, any Allowed Priority Non-Tax Claim that has been expressly assumed by the applicable Successful Bidder under the applicable Sale Documents shall not be an obligation of the Debtors.

(b)     Voting: Priority Non-Tax Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Priority Non-Tax Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Allowed Priority Non-Tax Claims.

### 5.2. *Other Secured Claims (Class 2).*

(a)     Treatment: The legal, equitable and contractual rights of the Holders of Allowed Other Secured Claims are unaltered by the Plan.  In full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Other Secured Claim, except to the extent that a Holder of an Allowed Other Secured Claim agrees to a different treatment, on the applicable Distribution Date each Holder of an Allowed Other Secured Claim shall receive: (i) Cash in an amount equal to such Allowed Claim; or (ii) such other treatment that will render such Other Secured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code; provided, however, that, to the extent consistent with the DIP Budget, Other Secured Claims incurred by a Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto, without further notice to or order of the Bankruptcy Court; provided, further, that in the event of a Sale Transaction, any Other Secured Claim that has been expressly assumed by the applicable Successful Bidder under the applicable Sale Documents shall not be an obligation of the Debtors.

Each Holder of an Allowed Other Secured Claim shall retain the Liens securing its Allowed Other Secured Claim as of the Effective Date until full and final satisfaction of such Allowed Other Secured Claim is made as provided herein.  Upon the full payment or other satisfaction of each Allowed Other Secured Claim in accordance with the Plan, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person and the Holder of such Claims shall deliver to the Debtors or

Post-Effective Debtors, as applicable, any Collateral or other property of a Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Claims that may be reasonably required to terminate any related financing statements, guaranties, or *lis pendens*, or similar interests or documents. Furthermore, upon full payment or other satisfaction of the foregoing Claims, on or after the Effective Date the Debtors or the Post-Effective Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, or evidence the release of any and all guaranties, pledges, and other security interests with respect to such Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any guaranties, mortgages, deeds of trust, Liens, pledges, and other security interests, including, without limitation, UCC-3 termination statements.

(b)  Deficiency Claims: To the extent that the value of the Collateral securing any Other Secured Claim is less than the Allowed amount of such Other Secured Claim, the undersecured portion of such Allowed Claim shall be treated for all purposes under this Plan as a General Unsecured Claim, only as applicable, and shall be classified and treated as the applicable Class 5 Claim.

(c)  Voting: The Other Secured Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Other Secured Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Allowed Other Secured Claims.

### 5.3. *Prepetition First Out Claims (Class 3).*

(a)  Treatment: On the Effective Date, the Prepetition Secured Loan Claims shall be Allowed under this Plan in the amount set forth in the Final DIP Order, and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any Person.  In full and final satisfaction, compromise, settlement, release, and discharge of each Prepetition First Out Claim, except to the extent that the Prepetition Secured Agent or a Holder of a Prepetition First Out Claim agrees to less favorable treatment with respect to such Holder's Claim, on the Effective Date, each Prepetition First Out Lender shall receive, subject to the terms of this Plan and the AAL, payment of all outstanding unreimbursed fees and expenses, if any, and its *pro rata* share of:

(i)  in the event the Restructuring Transactions are consummated through the Plan Equitization Transaction, the pro rata share allocable to such Prepetition First Out Lender of the Reorganized

32

Common Equity[4] (in accordance with the AAL), up to the Allowed Amount of the Prepetition First Out Claims; or

(ii)    in the event the Restructuring Transactions are consummated through the Sale Transaction, (i) payment in full, in Cash, on account of its Allowed Prepetition First Out Claim, or, (ii) proceeds from a Sale Transaction are insufficient for payment in full, in cash, on account of the Allowed Prepetition First Out Claims, payment, in Cash, on account of its Allowed Prepetition First Out Claim, in each case up to the Allowed Amount of the Prepetition First Out Claims.

(b)    <u>Voting</u>: The Prepetition First Out Claims are impaired Claims. Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited with respect to such Prepetition First Out Claims.

### 5.4. *Prepetition Last Out Claims (Class 4)*

(a)    <u>Treatment</u>: On the Effective Date, the Prepetition Secured Loan Claims shall be Allowed under this Plan in the amount set forth in the Final DIP Order, and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any Person. In full and final satisfaction, compromise, settlement, release, and discharge of each Prepetition Last Out Claim, except to the extent that the Prepetition Secured Agent or a Holder of a Prepetition Last Out Claim agrees to less favorable treatment with respect to such Holder's Claim, on the Effective Date, each Prepetition Last Out Lender shall receive, subject to the terms of this Plan and the AAL:

(i)    in the event the Restructuring Transactions are consummated through the Plan Equitization Transaction, the Prepetition Last Out Claims shall be subordinated and junior to all Allowed General Unsecured Claims and Allowed Consumer Credit Transaction Claims for purposes of distributions under the Plan, and each Prepetition Last Out Lender shall receive its pro rata share of the Distributable Assets Proceeds only upon payment in full of the Prepetition First Out Claims, Allowed General Unsecured Claims, and Allowed Consumer Credit Transaction Claims and in accordance with the priorities set forth in Section 7.34; or

(ii)    in the event the Restructuring Transactions are consummated through the Sale Transaction, the Prepetition Last Out Claims shall

---

[4]    In connection with the treatment of Holders of Second Out DIP Claims as described in Section 3.1 of the Plan, Holders of Prepetition First Out Claims and Second Out DIP Claims will collectively receive a pro rata share of 100% of the Reorganized Common Equity.

be subordinated and junior to all Allowed General Unsecured Claims and Allowed Consumer Credit Transaction Claims for purposes of distributions under the Plan, and each Prepetition Last Out Lender shall receive its pro rata share of the Distributable Assets Proceeds only upon payment in full of the Prepetition First Out Claims, Allowed General Unsecured Claims, and Allowed Consumer Credit Transaction Claims and in accordance with the priorities set forth in Section 7.34.

(b)     Voting: The Prepetition Last Out Claims are impaired Claims. Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited with respect to such Prepetition Last Out Claims.

### 5.5.     *General Unsecured Claims (Class 5).*

(a)     Treatment: In full and final satisfaction, compromise, settlement, release, and discharge of each Allowed General Unsecured Claim against the Debtors, except to the extent that a Holder of a General Unsecured Claim agrees to less favorable treatment, on the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed General Unsecured Claim against the Debtors shall receive:

(i)     in the event the Restructuring Transactions are consummated through the Plan Equitization Transaction, (x) the greater of the recovery such claimant would be entitled to receive under section 1129(a)(7) of the Bankruptcy Code, and (y) (A) its *pro rata* share of the GUC Recovery Pool allocable to the applicable Debtors, (B) its pro rata share of the Distributable Assets Proceeds in accordance with the priorities set forth in Section 7.34 and (C) Litigation Trust Interests, in accordance with the distribution priorities set forth in the Litigation Trust Agreement, in each case up to the Allowed Amount of such Allowed General Unsecured Claim, but excluding, for the avoidance of doubt, any Litigation Trust Interests constituting proceeds of Consumer Credit Transaction Claims, provided, that, the Subordinated Note Claims shall be subordinated and junior to all Allowed General Unsecured Claims and Allowed Consumer Credit Transaction Claims for purposes of distributions under the Plan, and each holder of a Subordinated Notes Claim shall receive its pro rata share of the Distributable Assets Proceeds only upon payment in full of the Prepetition First Out Claims, Allowed General Unsecured Claims, and Allowed Consumer Credit Transaction Claims; or

(ii)     in the event the Restructuring Transactions are consummated through the Sale Transaction, (A) its *pro rata* share of the General Unsecured Claims Distribution, if any, allocable to the applicable Debtors, if any, (B) its pro rata share of the Distributable Assets Proceeds in accordance with the priorities set forth in Section 7.34

and (C) Litigation Trust Interests, in accordance with the distribution priorities set forth in the Litigation Trust Agreement, in each case up to the Allowed Amount of such Allowed General Unsecured Claim[5], but excluding, for the avoidance of doubt, any Litigation Trust Interests constituting proceeds of Consumer Credit Transaction Claims, provided, that, the Subordinated Note Claims shall be subordinated and junior to all Allowed General Unsecured Claims and Allowed Consumer Credit Transaction Claims for purposes of distributions under the Plan, and each holder of a Subordinated Notes Claim shall receive its pro rata share of the Distributable Assets Proceeds only upon payment in full of the Prepetition First Out Claims, Allowed General Unsecured Claims, and Allowed Consumer Credit Transaction Claims.

(b)    Voting: The General Unsecured Claims against the Debtors are impaired Claims. Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited with respect to such General Unsecured Claims against the Debtors.

### 5.6.    *Consumer Credit Transaction Claims (Class 6).*

(a)    Treatment: In full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Consumer Credit Transaction Claim against the Debtors, except to the extent that a Holder of a Consumer Credit Transaction Claim agrees to less favorable treatment, on the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed Consumer Credit Transaction Claim against the Debtors shall receive:

(i)    in the event the Restructuring Transactions are consummated through the Plan Equitization Transaction, the greater of (x) the recovery such claimant would be entitled to receive under section 1129(a)(7) of the Bankruptcy Code, and (y) (A) its *pro rata* share of the GUC Recovery Pool allocable to the applicable Debtors, (B) the recovery of such claimant on account of its Consumer Credit Transaction Claims, including, without limitation, by prosecution of an Insurance Proceeds Recovery Action; (C) its pro rata share of the Distributable Assets Proceeds in accordance with the priorities set forth in Section 7.34 and (D) Litigation Trust Interests, in accordance with the distribution priorities set forth in the Litigation Trust Agreement, in each case up to the Allowed Amount of such Consumer Credit Transaction Claims and including, for the avoidance of doubt, any Litigation Trust Interests constituting proceeds of Consumer Credit Transaction Claims; or

---

[5]    In a Sale Transaction, the Litigation Trust Assets will consist of, among other things, Retained Causes of Action that have not otherwise been purchased in the Sale Transaction.

          (ii)        in the event the Restructuring Transactions are consummated through the Sale Transaction, (A) its *pro rata* share of the General Unsecured Claims Distribution, if any, allocable to the applicable Debtors, if any, (B) the recovery of such claimant on account of its Consumer Credit Transaction Claims, (C) its pro rata share of the Distributable Assets Proceeds in accordance with the priorities set forth in Section 7.34, and (D) Litigation Trust Interests, in accordance with the distribution priorities set forth in the Litigation Trust Agreement, in each case up to the Allowed Amount of such Consumer Credit Transaction Claims and including, for the avoidance of doubt, any Litigation Trust Interests constituting proceeds of Consumer Credit Transaction Claims.

      (b)    <u>Voting</u>: The Consumer Credit Transaction Claims against the Debtors are impaired Claims. Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited with respect to such Consumer Credit Transaction Claims against the Debtors.

### 5.7. *Subordinated Claims (Class 7).*

      (a)    <u>Treatment</u>: In full and final satisfaction, compromise, settlement, release, and discharge of each Subordinated Claim, except to the extent that a Holder of a Subordinated Claim agrees to less favorable treatment, on the Effective Date, or as soon as practicable thereafter, each Holder of a Subordinated Claim shall receive:

          (i)        in the event the Restructuring Transactions are consummated through the Plan Equitization Transaction, no distribution or recovery on account of its Subordinated Claim; or

          (ii)        in the event the Restructuring Transactions are consummated through the Sale Transaction, its *pro rata* share of the Subordinated Claims Distribution, if any. If the proceeds of the Sale Transaction do not result in a Subordinated Claims Distribution, then such Holder of a Subordinated Claim shall receive no consideration on account of its Subordinated Claim.

      (b)    <u>Voting</u>: The Subordinated Claims are impaired Claims. Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited with respect to such Subordinated Claims.

### 5.8. *Existing TopCo Equity Interests (Class 8).*

      (a)    <u>Treatment</u>: In full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Existing TopCo Equity Interest, whether the Restructuring Transactions are consummated through the Plan Equitization Transaction or the Sale Transaction, on the Effective Date, all Allowed Existing TopCo Equity Interest shall be cancelled, released, and extinguished, and will be of no further force or effect, and Holders of

each Allowed Existing TopCo Equity Interest shall not receive or retain any property or distributions under this Plan on account of such Allowed Existing TopCo Equity Interest.

(b)     Voting: In accordance with section 1126(g) of the Bankruptcy Code, the Holders of Allowed Existing TopCo Equity Interests are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Existing TopCo Equity Interests.

### 5.9.    *Existing Intercompany Equity Interests (Class 9).*

(a)     Treatment: On the Effective Date, whether the Restructuring Transactions are consummated through the Plan Equitization Transaction or the Sale Transaction, each Holder of an Allowed Existing Intercompany Equity Interest shall receive no distribution on account of its Existing Intercompany Equity Interest, which shall, at the election of the Debtors, the DIP Agent and the Prepetition Secured Agent, be (i) extinguished, canceled and/or discharged on the Effective Date, or (ii) reinstated and otherwise survive the Debtors' restructuring by virtue of such Existing Intercompany Equity Interest being left unimpaired.

(b)     Voting: The Existing TopCo Equity Interests are impaired Interests.  In accordance with section 1126(g) of the Bankruptcy Code, the Holders of Allowed Existing Intercompany Equity Interest are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Allowed Existing Intercompany Equity Interest.

### ARTICLE VI.
### ACCEPTANCE OR REJECTION OF THE PLAN;
### EFFECT OF REJECTION BY ONE OR MORE
### CLASSES OF CLAIMS OR INTERESTS

### 6.1.    *Class Acceptance Requirement.*

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an impaired Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of Holders of the Allowed Claims in such Class that have voted on the Plan.  A Class of Interests that is entitled to vote on the Plan has accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of Allowed Interests of such Class that have voted on the Plan.

### 6.2.    *Tabulation of Votes on a Non-Consolidated Basis.*

All votes on the Plan shall be tabulated on a non-consolidated basis by Class and by Debtor for the purpose of determining whether the Plan satisfies sections 1129(a)(8) and/or (10) of the Bankruptcy Code.

### 6.3. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown."

Because certain Classes are deemed to have rejected this Plan, the Debtors will request confirmation of this Plan, as it may be modified and amended from time to time, under section 1129(b) of the Bankruptcy Code with respect to such Classes. Subject to Section 14.3 and Section 14.4 of this Plan, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan or any Plan Document in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary. Subject to Section 14.3 and Section 14.4 of this Plan, the Debtors also reserve the right to request confirmation of the Plan, as it may be modified, supplemented or amended from time to time, with respect to any Class that affirmatively votes to reject the Plan.

### 6.4. Elimination of Vacant Classes.

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest, or a Claim or Interest temporarily Allowed as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 6.5. Voting Classes; Deemed Acceptance or Rejection by Non-Voting Classes.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by such Class.

Classes 1 and 2 are unimpaired under this Plan and Holders of Claims or Interests in such Classes are, therefore, conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Claims in Classes 1 and 2 are not entitled to vote to accept or reject this Plan.

Claims in Classes 8 and 9 are impaired and shall receive no distributions under this Plan and Holders of Claims or Interests in such Class are, therefore, conclusively presumed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Claims in Classes 8 and 9 are not entitled to vote on this Plan and votes of such Holders shall not be solicited.

### 6.6. Confirmation of All Cases.

Except as otherwise specified herein, the Plan shall not be deemed to have been confirmed unless and until the Plan has been confirmed as to each of the Debtors; provided, however, that the Debtors, with the consent of the Prepetition Secured Agent and DIP Agent, may at any time waive this Section 6.6.

### 6.7. *Vacant and Abstaining Classes.*

Any Class of Claims or Interests that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code. Moreover, any Class of Claims that is occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018, but as to which no vote is cast, shall be deemed to accept this Plan pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 6.8. *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claim or Interest (or any Class of Claims or Interests) is impaired under this Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or prior to the Confirmation Date, absent consensual resolution of such controversy among the Debtors and the complaining Entity or Entities.

### ARTICLE VII.
### MEANS FOR IMPLEMENTATION

### 7.1. *Non-Substantive Consolidation.*

The Plan is a joint plan that does not provide for substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for purposes hereof. Except as specifically set forth herein, nothing in this Plan shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any Claim against any other Debtor. Additionally, claimants holding Claims and Interests against multiple Debtors, to the extent Allowed in each Debtor's Chapter 11 Case, will be treated as holding a separate Claim or separate Interest, as applicable, against each Debtor's Estate; provided, however, that no Holder of an Allowed Claim shall be entitled to receive more than payment in full of such Allowed Claim (plus postpetition interest, if and to the extent provided in this Plan), and such Claims will be administered and treated in the manner provided in this Plan.

### 7.2. *Plan Equitization Transaction.*

The Plan Equitization Transaction will be consummated unless a Sufficient Bid is received by the Debtors prior to or during the Auction, and the Sale Toggle Event occurs. The Debtors will announce publicly no later than the Auction whether the Restructuring Transaction will be consummated pursuant to the Plan Equitization Transaction.

Following entry of the Confirmation Order and subject to any applicable limitations set forth in any post-Effective Date agreements, or as soon as reasonably practicable thereafter, the Debtors or the Reorganized Debtors may take all actions as may be necessary or appropriate to effect the Restructuring Transaction (including any transaction described in, approved by, contemplated by or necessary to effectuate this Plan), and as set forth in the Restructuring

Transactions Memorandum, including: (a) the execution and delivery of appropriate agreements or other documents of reorganization containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of this Plan; (c) the filing of appropriate certificates of incorporation, merger, migration, consolidation, or other Organizational Documents with the appropriate governmental authorities pursuant to applicable law; (d) the execution, delivery, and filing, if applicable, of the New Organizational Documents; (e) such other transactions that are required to effectuate the Restructuring Transactions, including any mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; and (f) all other actions that the Reorganized Debtors reasonably determine, in consultation with the Prepetition Secured Agent and the DIP Agent and are necessary or appropriate, including making filings or recordings that may be required by applicable law. For the purposes of effectuating this Plan, none of the Restructuring Transactions contemplated herein shall constitute a "change of control" or "assignment" (or terms with similar effect) under, or any other transaction or matter that would result in a violation, breach, or default under, or increase, accelerate, or otherwise alter any obligations, rights or liabilities of the Debtors or the Reorganized Debtors under, or result in the creation or imposition of a Lien upon any property or asset of the Debtors or the Reorganized Debtors pursuant to, any agreement, contract, or document of the Debtors, and any consent or advance notice required under any agreement, contract, or document of the Debtors shall be deemed satisfied by confirmation.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

### 7.3. *Sale Transaction.*

In the event any Sale Transaction is consummated, the Sale Proceeds, the Professional Fee Escrow Amount, the Wind Down Amount, any reserves required pursuant to the applicable Sale Documents, the Debtors' rights under the applicable Sale Documents, payments made directly by the applicable Successful Bidder on account of any Assumed Liabilities under the applicable Sale Documents, payments of Cure Amounts made by the applicable Successful Bidder pursuant to sections 365 or 1123 of the Bankruptcy Code, and/or all Causes of Action not previously settled, released, or exculpated under the Plan (including the Retained Causes of Action), if any, shall be used to fund the distributions to Holders of Allowed Claims against the Debtors in accordance with the treatment of such Claims and subject to the terms provided in this Plan. Unless otherwise agreed in writing by the Debtors and the applicable Successful Bidder, distributions required by this Plan on account of Allowed Claims that are Assumed Liabilities shall be the sole responsibility of the applicable Successful Bidder even if such Claim is Allowed against the Debtors, and such Claims shall have no recovery from the Debtors under the terms of the Plan.

7.4.    ***Continued Corporate Existence in Certain Debtors; Vesting of Assets; Dissolution of Certain Debtors.***

(a)    General.  Except as otherwise provided in this Plan or as otherwise may be agreed between the Debtors, the Prepetition Secured Agent and the DIP Agent, each of the Debtors that becomes a Reorganized Debtors shall continue to exist on and after the Effective Date as a separate legal Entity with all of the powers available to such legal Entity under and in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the New Organizational Documents, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law.  On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement with any Reorganized Debtor, each of the Reorganized Debtors, in consultation with the Prepetition Secured Agent and the DIP Agent, may take such action as permitted by applicable law and such Reorganized Debtor's New Organizational Documents, as such Reorganized Debtor, may determine is reasonable and appropriate, including, but not limited to, causing: (a) a Reorganized Debtor to be merged with and into another Reorganized Debtor, or a subsidiary and/or Affiliate of a Reorganized Debtor; (b) creation of a new subsidiary of a Reorganized Debtor, (c) a Reorganized Debtor to be dissolved; (d) the conversion of a Reorganized Debtor from one Entity type to another Entity type; (e) the legal name of a Reorganized Debtor to be changed; (f) the closure of a Reorganized Debtor's Chapter 11 Case on the Effective Date or any time thereafter; or (g) the reincorporation of a Reorganized Debtor under the law of jurisdictions other than the law under which the Debtor currently is incorporated.

(b)    Vesting of Assets.  Except as otherwise provided in this Plan, on and after the Effective Date, all property of the Estates, wherever located, including all claims, rights and Causes of Action and any property acquired by the applicable Reorganized Debtors under or in connection with this Plan, as set forth in the Restructuring Steps Memorandum, shall vest in the applicable Reorganized Debtor, free and clear of all Claims, Liens, charges, other encumbrances and Interests, with any remaining property of the Estates remaining with the Wind Down Debtors or the Litigation Trust, as applicable.  On and after the Effective Date, except as otherwise provided in this Plan or in the Confirmation Order, each applicable Reorganized Debtor may operate its business(es) and may use, acquire and dispose of property, wherever located, and each Reorganized Debtor may prosecute, compromise or settle any Retained Causes of Action that have vested into such Reorganized Debtor without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.  Without limiting the foregoing, the Wind Down Debtors may pay the charges that they incur on or after the Effective Date, if any, for Professional Persons' fees, disbursements, expenses or related support services without application to the Bankruptcy Court.  Anything in this Plan to the contrary notwithstanding, any unimpaired Claims against a Debtor shall remain the obligations solely of such Debtor or such Reorganized Debtor and shall not become obligations of any other Debtor or Reorganized Debtor by virtue of this Plan, the Chapter 11 Cases, or otherwise.

(c)    Administration of the Wind Down Debtors.  On or as soon as reasonably practicable after the Effective Date, the Wind Down Debtors shall be authorized, following the completion of the distributions set forth in Article IV hereof, to commence the Wind Down and

administer the Wind Down Debtors until such time as the Wind Down Debtors or Plan Administrator, as applicable, determine to merge, dissolve and/or wind down the Wind Down Debtors under applicable law; <u>provided</u> that, notwithstanding such dissolution, Wind Down Debtors shall remain authorized to continue the Wind Down, including filing any necessary documents with the appropriate authorities, including any tax returns, and to facilitate the closing of the Chapter 11 Cases as to such Debtors.

### 7.5. *Indemnification Provisions in Organizational Documents.*

Subject to the occurrence of the Effective Date, to the fullest extent permitted by applicable law, the obligations of the Debtors as of the Effective Date to indemnify, defend, reimburse, or limit the liability of the current and former directors, managers, officers, employees, attorneys, other professionals and agents of the Debtors, and such current and former directors', managers', and officers' respective Affiliates, respectively, against any Claims or Causes of Action under any indemnification provisions or applicable law, shall survive Confirmation, shall be assumed by the Debtors on behalf of the applicable Debtor (but not the Reorganized Debtors, for the avoidance of doubt) and assigned to the Wind Down Debtor, which shall be deemed to have assumed the obligation, and will remain in effect after the Effective Date if such indemnification, defense, reimbursement, or limitation is owed in connection with an event occurring before the Effective Date.

### 7.6. *Sources for Cash Distributions under this Plan.*

In the event of a Plan Equitization Transaction, the Debtors shall fund Cash distributions under the Plan with Cash on hand, including Cash from operations, and the proceeds of the DIP Loans. Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors or the Disbursing Agent in accordance with <u>Article VIII</u>.

In the event of a Sale Transaction, the Debtors shall fund Cash distributions under the Plan from Cash on hand (if any), and the Sale Proceeds in accordance with the terms of the Sale Documents and the Plan.

From and after the Effective Date, subject to any applicable limitations set forth in any post-Effective Date agreement (including, without limitation, the New Organizational Documents), the Reorganized Debtors shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing as the boards of managers or directors, as applicable (or other applicable governing bodies), of the applicable Reorganized Debtors deem appropriate.

### 7.7. *[Reserved].*

### 7.8. *[Reserved].*

### 7.9. *Reorganized Debtors' Ownership.*

In the event of a Plan Equitization Transaction, on the Effective Date, in accordance with the terms of the Plan and the Restructuring Transactions Memorandum and as further set forth in the Plan Supplement, Reorganized TopCo shall issue and deliver all of the Reorganized

Common Equity to Holders of Second Out DIP Claims and Holders of Prepetition First Out Claims pursuant to the terms and conditions of this Plan and the New Organizational Documents. The issuance of Reorganized Common Equity pursuant to the Plan is authorized without the need for further limited liability company or corporate action and without any further action by any Holder of a Claim or Interest, and all of the Reorganized Common Equity issued or issuable pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

Any Holder of an Allowed Second Out DIP Claim may designate that all or a portion of such Holder's pro rata share of the Reorganized Common Equity to be distributed as part of the treatment of such Allowed DIP Claims, be registered in the name of, and delivered to, its designee by delivering notice thereof to counsel to the Debtors and to the Claims Agent at least five (5) Business Days prior to the Effective Date. Any Holder of an Allowed Prepetition Secured Loan Claim may designate that all or a portion of such Holder's *pro rata* share of the Reorganized Common Equity to be distributed as part of the treatment of such Allowed Prepetition Secured Loan Claims, be registered in the name of, and delivered to, its designee by delivering notice thereof to counsel to the Debtors and to the Claims Agent at least five (5) Business Days prior to the Effective Date. Any such designee shall be an "accredited investor" as such term is defined in Rule 501(a) of Regulation D promulgated under the Securities Act.

### 7.10. *Exemption from Registration Requirements.*

The offering, issuance, and distribution of any securities, including the Reorganized Common Equity, in exchange for Claims pursuant to Article III of the Plan and/or any and all settlement agreements incorporated herein or otherwise entered into in accordance with the terms of the Plan, shall be exempt from, among other things, the registration requirements of the Securities Act and any other applicable U.S. state or local laws requiring registration prior to the offering, issuance, distribution, or sale of securities pursuant to section 1145 of the Bankruptcy Code (except with respect to an entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code). Except as otherwise provided in the Plan or the governing certificates or instruments, any and all such Reorganized Common Equity so issued under the Plan (a) will not be "restricted securities" (as defined under the Securities Act), and (b) will be freely tradable and transferable under the Securities Act by the recipients thereof that are not, and have not been within 90 days of such transfer, an "affiliate" (as defined in Rule 144(a)(1) under the Securities Act) of the Debtors or the Reorganized Debtors, in each case, subject to (x) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code, (y) compliance with applicable securities laws and any rules and regulations, including those of the United States Securities and Exchange Commission or U.S. state or local securities laws, if any, applicable at the time of any future transfer of such securities or instruments, and (z) any restrictions in the New Organizational Documents of Reorganized TopCo.

Notwithstanding anything to the contrary in the Plan, no Entity shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether issuance of the Reorganized Common Equity is exempt from registration.

### 7.11. *Organizational Documents.*

In the event of a Plan Equitization Transaction, the Reorganized Debtors shall enter into such agreements and/or amend their corporate governance documents to the extent necessary to implement the terms and provisions of the Plan and the Bankruptcy Code, which shall: (1) contain terms consistent with the Plan Supplement; and (2) authorize the issuance, distribution, and reservation of the Reorganized Common Equity to the Entities entitled to receive such issuances, distributions and reservations, as applicable under the Plan. The New Organizational Documents will be deemed to be modified to prohibit (and will include a provision prohibiting) the issuance of non-voting equity securities, pursuant to and solely to the extent required under section 1123(a)(6) of the Bankruptcy Code. Without limiting the generality of the foregoing, as of the Effective Date, the Reorganized Debtors shall be governed by the New Organizational Documents applicable to it. On or immediately before the Effective Date, each Debtor and each Reorganized Debtor will file its respective New Organizational Documents with the applicable Secretary of State and/or other applicable authorities in its respective state of incorporation or formation in accordance with the applicable laws of its state of incorporation or formation, to the extent required under this Plan or applicable nonbankruptcy law for such New Organizational Documents to become effective. After the Effective Date, the Reorganized Debtors may amend and restate the formation, incorporation, organizational, and constituent documents, as applicable, as permitted by the laws of its respective jurisdiction of formation or incorporation, as applicable, and the terms of such documents.

As a condition to receiving the Reorganized Common Equity, Holders of Allowed Second Out DIP Claims and Allowed Prepetition Secured Loan Claims and/or any of their respective designees for receipt of Reorganized Common Equity will be required to execute and deliver the applicable New Organizational Documents for Reorganized TopCo. For the avoidance of doubt, any Entity's or Person's receipt of Reorganized Common Equity under, or as contemplated by, the Plan shall be deemed as its agreement to the applicable New Organizational Documents for Reorganized TopCo, and such Entities and Persons shall be deemed signatories to the applicable New Organizational Documents for Reorganized TopCo without further action required on their part (solely in their capacity as members of Reorganized TopCo). The New Organizational Documents for Reorganized TopCo will be effective as of the Effective Date and, as of such date, will be deemed to be valid, binding, and enforceable in accordance with its terms, and each Holder of Reorganized Common Equity will be bound thereby in all respects even if such Holder has not actually executed and delivered a counterpart thereof.

### 7.12. *Exemption from Certain Transfer Taxes and Recording Fees.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to or in connection with the Plan (including, if applicable, the Sale Transaction), including: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; (4) the grant of collateral security for any or all of the Exit Term Loans or other indebtedness or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan,

including, without limitation, any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any U.S. federal, state or local document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate U.S. federal, state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Unless the Bankruptcy Court orders otherwise, all sales, transfers, and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, this Plan.

### 7.13. *Other Tax Matters.*

In the event of a Plan Equitization Transaction, from and after the Effective Date, the Reorganized Debtors shall be authorized to make and to instruct any of their wholly-owned subsidiaries to make any elections available to them under applicable law with respect to the tax treatment of the Restructuring Transaction.

### 7.14. *Cancellation of Existing Securities and Agreements.*

Except for the purpose of evidencing a right to distribution under this Plan, and except as otherwise set forth in this Plan or in the Restructuring Transactions Memorandum, on the Effective Date, all agreements, including all intercreditor agreements, instruments, and other documents directly or indirectly evidencing, related to or connected with any Claim, other than certain Intercompany Claims and Existing Intercompany Equity Interests, in each case as set forth in the Plan, and any rights of any Holder in respect thereof, shall be deemed cancelled, discharged and of no force or effect without further act or action under any applicable agreement, law, regulation, order, or rule. The holders of or parties to such cancelled instruments, securities and other documentation will have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan.  Notwithstanding anything to the contrary herein, each of the DIP Credit Agreement and the Prepetition Secured Credit Agreement shall continue in effect solely to the extent necessary to permit Holders of the DIP Claims and Prepetition Secured Loan Claims to receive distributions under this Plan on account of such respective Claims.  Except as provided pursuant to this Plan, upon satisfaction of the DIP Claims and the Prepetition Secured Loan Claims, respectively (and as the case may be), each of the DIP Agent and the Prepetition Secured Agent, respectively (and as the case may be), shall be discharged of all of their respective obligations associated with the DIP Credit Agreement and the Prepetition Secured Credit Agreement, respectively (and as the case may be). Nothing here in shall impair or otherwise affect the Reorganized Debtors' obligations under the Exit Term Loan Documents.

On the Effective Date, except as otherwise specifically provided for in this Plan (including in the Restructuring Transactions Memorandum): (i) the obligations of the Debtors under any certificate, share, note, bond, agreement, indenture, purchase right, option, warrant, call, put, award, commitment, registration rights, preemptive right, right of first refusal, right of

first offer, co-sale right, investor rights, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of or ownership interest in the Debtors that are specifically reinstated pursuant to this Plan, if any) shall be cancelled, terminated and of no further force or effect solely as to the Debtors, without further act or action, and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, calls, puts, awards, commitments, registration rights, preemptive rights, rights of first refusal, rights of first offer, co-sale rights, investor rights, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of or ownership interest in the Debtors that are specifically reinstated pursuant to this Plan, if any) shall be automatically and fully released and discharged.

### 7.15. *Boards.*

(a)     In the event of a Plan Equitization Transaction, subject to the terms of the applicable New Organizational Documents, on the Effective Date, the New Boards shall consist of those individuals identified in the Plan Supplement to be filed with the Bankruptcy Court at or before the Confirmation Hearing.  Unless reappointed, the members of the boards of the Debtors prior to the Effective Date shall have no continuing obligations to the Reorganized Debtors and after the Effective Date and each such member shall be deemed to have resigned or shall otherwise cease to be a director of the applicable Debtor on the Effective Date.  Commencing on the Effective Date, each of the New Boards shall serve pursuant to the terms of the applicable New Organizational Documents or the applicable Organizational Documents of such Reorganized Debtor, and may be replaced or removed in accordance therewith.

(b)     Following the Effective Date, the Plan Administrator shall be the sole director, manager or managing member, as applicable, of each of the Wind Down Debtors.  The members of the boards of the Debtors prior to the Effective Date shall have no continuing obligations to the Reorganized Debtors or Wind Down Debtors on and after the Effective Date and each such member shall be deemed to have resigned or shall otherwise cease to be a director of the applicable Debtor on the Effective Date.

### 7.16. *Management.*

In the event of a Plan Equitization Transaction, as of the Effective Date, the individuals who will serve in certain senior management positions of the Reorganized Debtors shall consist of those individuals set forth in the Plan Supplement.  From and after the Effective Date, the Wind Down Debtors shall be managed and administered by the Plan Administrator, who shall be appointed the sole officer of each of the Wind Down Debtors and shall have full authority to administer the provisions of the Plan.  The Plan Administrator may employ one or more Persons to assist it with performing its duties under the Plan.

### 7.17. *Directors and Officers and Consumer Liability Insurance Policies*

In accordance with the Plan, (i) on the Effective Date, the Wind Down Debtors shall be deemed to have assumed all of the Debtors' D&O Liability and Consumer Liability Insurance Policies (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto, which "tail policy" shall not be otherwise terminated or reduced) in effect prior to the Effective Date pursuant to sections 105 and 365(a) of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court; (ii) confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies and Consumer Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Wind Down Debtors under the Plan as to which no Proof of Claim or Proof of Interest need be filed; (iii) the Wind Down Debtors shall retain the ability to supplement such D&O Liability Insurance Policies Consumer Liability Insurance Policies as the Wind Down Debtors may deem necessary; and (iv) for the avoidance of doubt, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the assumption of each of the unexpired D&O Liability Insurance Policies and Consumer Liability Insurance Policies. The D&O Liability Insurance Policies and Consumer Liability Insurance Policies shall constitute Litigation Trust Assets, provided that, for the avoidance of doubt, the D&O Liability Insurance Policies and Consumer Liability Insurance Policies shall maintain coverage for those insureds currently covered by such policies for the remaining term of such policies and runoff or tail coverage after the Effective Date to the fullest extent permitted by such policies.

For the avoidance of doubt, on and after the Effective Date, each of the Reorganized Debtors shall be authorized to purchase a directors' and officers' liability insurance policy for the benefit of their respective directors, members, trustees, officers, and managers in the ordinary course of business.

### 7.18. *Corporate Action.*

(a)     On the Effective Date, the New Organizational Documents and any other applicable amended and restated corporate Organizational Documents of each of the Reorganized Debtors, shall be deemed authorized in all respects. On the Effective Date, all actions contemplated by this Plan (including any transaction described in, or contemplated by, the Restructuring Transactions Memorandum) and the Restructuring Transaction shall be deemed authorized and approved in all respects, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court.

(b)     Any action under the Plan to be taken by or required of the Debtors or the Reorganized Debtors, including the adoption or amendment of certificates of formation, incorporation and by-laws, entry into the Exit Term Loan Documents, the issuance of securities and instruments, or the selection of officers or directors shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors' or the Reorganized Debtors' equity holders, sole members, boards of directors or boards of managers, or similar body, as applicable.

(c)     On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and, as applicable, directed to issue, execute, deliver, acknowledge, file, and/or record, as applicable, such securities, documents, contracts, instruments, releases and other agreements and take such other action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, in the name of and on behalf of the Debtors and the Reorganized Debtors, as applicable, without the necessity of any further Bankruptcy Court, corporate, limited liability company, board, member, or shareholder approval or action.  In addition, the selection of the Persons who will serve as the initial directors, officers and managers of the Reorganized Debtors as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of directors, board of managers, or equity holders of the applicable Reorganized Debtor.

(d)     The authorizations, approvals and directives contemplated by this Section 7.18 shall be effective notwithstanding any requirements under non-bankruptcy Law.

### 7.19.  *Consumer Liability Insurance Proceeds*

All Holders of Consumer Credit Transaction Claims will be permitted to pursue their Claims against Solar Mosaic LLC under all available and applicable Consumer Liability Insurance Policies. The proceeds of such policies, which shall be assumed by the Debtors and assigned to the Litigation Trust, shall be exclusively available for the satisfaction of the damages awarded to Holders of Consumer Credit Transaction Claims in Insurance Proceeds Recovery Actions.  Holders of Consumer Credit Transaction Claims that hold claims that arise out of loans still held by Solar Mosaic LLC may seek additional injunctive and declaratory relief, as well as cancellation of the relevant loans, in the relevant Insurance Proceeds Recovery Actions.  In addition, and for avoidance of doubt, Holders of Consumer Credit Transaction Claim may pursue Claims against all parties not subject to the Third-Party Release, including the Financing Parties and the ABS Released Parties.   In no event shall the aggregate recoveries of any Holder of a Consumer Credit Transaction Claim, under the Plan, in an Insurance Proceeds Recovery Action, and/or otherwise, exceed the Allowed amount of such Holder's Consumer Credit Transaction Claim.

### 7.20.  *Plan Administrator.*

(a)     Appointment; Duties.   The Debtors, DIP Agent and the Prepetition Secured Agent, in consultation with the Committee, shall designate the Person who initially will serve as the Plan Administrator in the Plan Supplement; provided, however, that: (i) the Debtors shall have the right at any time prior to the Effective Date to remove the Plan Administrator without cause; and (ii) the Plan Administrator shall be subject to removal by the Bankruptcy Court for cause shown at any time.  On or after the Confirmation Date but prior to the Effective Date, the Plan Administrator shall assume all of its obligations, powers and authority under the Plan to: (y) establish bank accounts as may be required to fulfill the Debtors' obligations under this Plan; and (z) exercise such other power and authority as may be set forth in the Confirmation Order (collectively, the "***Pre-Effective Date PA Duties***").   On the Effective Date, the Plan Administrator shall assume all of its other obligations, powers and authority under the Plan, including, but not limited to, those powers set forth in Section 7.20.

       (b)    <u>Qualifications; Plan Administrator Agreement</u>.

           (i)    *Plan Administrator as Fiduciary*.  The Plan Administrator shall be a fiduciary of the Wind Down Debtors, shall have such qualifications and experience as are sufficient to enable the Plan Administrator to perform its obligations under this Plan and under the Plan Administrator Agreement, and shall be compensated and reimbursed for expenses as set forth in, and in accordance with, the Plan Administrator Agreement.  To the extent necessary, following the Effective Date, the Plan Administrator shall be deemed to be a judicial substitute for the Debtors as the party-in-interest in the Chapter 11 Cases, under the Plan or in any judicial proceeding or appeal to which the Debtors are a party, consistent with section 1123(b)(3)(B) of the Bankruptcy Code.

The Plan Administrator shall not be liable for any action it takes or omits to take that it believes in good faith to be authorized or within its rights or powers unless it is ultimately and finally determined by a court of competent jurisdiction that such action or inaction was the result of fraud, gross negligence or willful misconduct.

           (ii)    *Provisions of Agreement and Order*.  The Plan Administrator Agreement and the Confirmation Order shall provide that: (i) the Plan Administrator shall be a fiduciary of the Wind Down Debtors; (ii) neither the Debtors (except as expressly set forth in the Plan Administrator Agreement) nor their respective boards of directors, managements, employees and professionals shall have any liability for any action taken or omitted to be taken by the Plan Administrator in performing the Pre-Effective Date PA Duties and all Persons are enjoined from pursuing any Claims against the foregoing pursuant to this Plan on account of any such action taken or omitted to be taken; (iii) if the Plan is withdrawn or otherwise abandoned prior to the occurrence of the Effective Date, the Plan Administrator position shall thereafter be dissolved automatically.

       (c)    <u>Resignation, Death or Removal</u>.  The Plan Administrator may be removed by the Bankruptcy Court upon application for good cause shown.  In the event of the resignation or removal, liquidation, dissolution, death or incapacity of the Plan Administrator, the Bankruptcy Court shall designate another Person to become Plan Administrator and thereupon the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of its predecessor.

       (d)    <u>Wind Down Funds</u>.  On the Effective Date, the Plan Administrator shall establish and fund the Wind Down Account from all Cash of the Debtors as of the Effective Date, *minus* the distributions to Holders of Claims required by this Plan, *plus* any Cash received by the Wind Down Debtors on and after the Effective Date.  To the extent any funds remain in the Wind Down Account after all distributions have been made pursuant to the Plan, any such excess funds shall be returned to the DIP Agent for the benefit of the DIP Lenders.

**7.21.** *Wind Down of the Debtors' Estates.*

(a)     The Plan Administrator shall oversee the Wind Down and shall make distributions to, and otherwise hold all property of the Estates for the benefit of, Holders of Allowed Claims and Allowed Interests in accordance with the Plan and the Confirmation Order. Neither the Wind Down Debtors nor the Plan Administrator shall be required to post a bond in favor of the United States.

(b)     As forth in the Plan Administrator Agreement, the Plan Administrator shall have the power and authority to perform the following acts with respect to the Wind Down Debtors, in addition to any powers granted by law or conferred by any other provision of the Plan and orders of the Bankruptcy Court: (i) take all steps and execute all instruments and documents necessary to make distributions to holders of Allowed Claims and Allowed Interests that the Wind Down Debtors are responsible for payment of pursuant to the terms of this Plan; (ii) object to Claims, if any, as provided in this Plan and prosecute such objections; (iii) resolve, compromise and/or settle any objections to the amount, validity, priority, treatment or allowance of Claims, Administrative Expense Claims, or Interests; (iv) comply with this Plan and the obligations hereunder; (v) if necessary, employ, retain, or replace professionals to represent it with respect to its responsibilities; (vi) take all actions necessary or appropriate to enforce the Wind Down Debtors' rights and fulfill the Wind Down Debtors' obligations under the Sale Documents; (vii) prepare and file applicable tax returns for the Wind Down Debtors; (viii) deposit Estate funds, draw checks and make disbursements consistent with the terms of this Plan; (ix) purchase or continue insurance protecting the Wind Down Debtors, the Plan Administrator and property of the applicable Estates; (x) seek entry of a final decree in any of the Wind Down Debtors' Chapter 11 Cases at the appropriate time; (xi) resolve, compromise and/or settle any Cure Disputes; (xii) abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization (as such term is described in Internal Revenue Code section 501(c)(3) (whose contributions are deductible under Internal Revenue Code section 170)) of the Plan Administrator's choice, any Estate assets that are of no material benefit, including distributable Cash under this Plan; (xiii) maintain the Loan Ownership Database and process Loan Ownership Information Requests in conjunction with the Reorganized Debtors (and its affiliates) as necessary (provided that the Reorganized Debtors shall be reasonably compensated for any time or services provided in connection with maintaining the Loan Ownership Database); and (xiv) take such other action as the Plan Administrator may determine to be necessary or desirable to carry out the purpose of this Plan.

(c)     Following the Effective Date, none of the Wind Down Debtors shall engage in any business activities or take any actions except those necessary to effectuate the Plan (including under the Sale Documents), the terms of the Plan Administrator Agreement, and administer the Wind Down.  On and after the Effective Date, the Plan Administrator may, in the name of the Wind Down Debtors, take such action and settle and compromise Claims or Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order.

### 7.22. Creation of the Litigation Trust

On the Effective Date, the Debtors and the Litigation Trustee shall execute the Litigation Trust Agreement and shall take all steps necessary to establish the Litigation Trust in accordance with the Plan and the beneficial interests therein, which shall be for the benefit of the Litigation Trust Beneficiaries. Additionally, on the Effective Date, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Litigation Trust all of their rights, title, and interest in and to all of the Litigation Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, except as specifically provided in the Plan or the Confirmation Order, the Litigation Trust Assets shall automatically vest in the Litigation Trust free and clear of all Claims, liens, encumbrances, or interests subject only to the Litigation Trust Interests and the Litigation Trust Expenses, as provided for in the Plan and the Litigation Trust Agreement,. The Litigation Trustee shall be the exclusive trustee of the Litigation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The Litigation Trust shall be governed by the Litigation Trust Agreement and administered by the Litigation Trustee, which shall be designated by the Committee, in consultation with the Debtors, the DIP Agent and the Prepetition Secured Agent, until a successor is chosen pursuant to the terms of the Litigation Trust Agreement. The powers, rights, and responsibilities of the Litigation Trustee shall be specified in the Litigation Trust Agreement. The Litigation Trust shall hold and distribute the Litigation Trust Assets in accordance with the provisions of the Plan and the Litigation Trust Agreement. Other rights and duties of the Litigation Trustee and the Litigation Trust Beneficiaries shall be as set forth in the Litigation Trust Agreement. For the avoidance of doubt, after the Effective Date, the Wind Down Debtors and the Estates shall have no interest in the Litigation Trust Assets, the transfer of the Litigation Trust Assets to the Litigation Trust is absolute, and the Litigation Trust Assets shall not be held or deemed to be held in trust by the Litigation Trustee on behalf of any of the Debtors or the Estates.

### 7.23. Purpose of the Litigation Trust

The Litigation Trust shall be established for the purpose of: pursuing or liquidating the Litigation Trust Assets, and making Distributions to the Litigation Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The Litigation Trustee shall be entitled to pursue (or refuse to pursue) any Claims objections and settlements with respect to the Litigation Trust Assets. The Litigation Trust will retain counsel acceptable to the Litigation Trustee in order to pursue and liquidate the Litigation Trust Assets. The Litigation Trust Agreement shall provide that Holders of Allowed General Unsecured Claims or Allowed Consumer Credit Transaction Claims may assign any applicable direct claims that such Holders have against third parties related to the Debtors to the Litigation Trust, which shall be subject to the distribution priorities set forth in the Litigation Trust Agreement.

### 7.24. Litigation Trustee, Litigation Trust Oversight Board, and Litigation Trust Agreement.

The Litigation Trustee shall be selected by the Committee, in consultation with the Debtors and the DIP and Prepetition Agent. The initial Litigation Trustee shall be named following the Effective Date.

The Litigation Trust Oversight Board shall be created on the Effective Date and be comprised of three (3) members selected by the Creditors' Committee, with which the Litigation Trustee, in connection with the performance of its duties, must consult and cooperate, and which shall have the duties and powers set forth in the Litigation Trust Agreement. The initial members of the Litigation Trust Oversight Board shall be Adam McNeile and Kristi Kelly.

The Litigation Trust Agreement generally will provide for, among other things: (i) the payment of the Litigation Trust Expenses; (ii) the payment of other reasonable expenses of the Litigation Trust; (iii) the retention of counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation; (iv) the investment of Cash by the Litigation Trustee within certain limitations, including those specified in the Plan; (v) the orderly liquidation of the Litigation Trust Assets; and (vi) litigation of any Retained Causes of Action belonging to the Litigation Trust, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action.

The Litigation Trustee, on behalf of the Litigation Trust, may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Debtors or the Committee) to assist in carrying out the Litigation Trustee's duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Litigation Trust Assets in accordance with the Plan and the Litigation Trust Agreement.

The Litigation Trust Agreement shall provide that the Litigation Trustee and the members of the Litigation Trust Oversight Board shall be indemnified by and receive reimbursement from the Litigation Trust Assets against and from any and all loss, liability, expense (including reasonable attorneys' fees), or damage which the Litigation Trustee incurs or sustains, in good faith and without either willful misconduct, gross negligence or fraud, acting as Litigation Trustee under or in connection with the Litigation Trust Agreement.

On and after the Effective Date, the Litigation Trustee shall have the power and responsibility to do all acts contemplated by the Plan to be done by the Litigation Trustee and all other acts that may be necessary or appropriate in connection with the disposition of the Litigation Trust Assets and the distribution of the proceeds thereof, as contemplated by the Plan and in accordance with the Litigation Trust Agreement. In all circumstances, the Litigation Trustee shall act in its reasonable discretion in the best interests of the Litigation Trust Beneficiaries pursuant to the terms of the Plan and the Litigation Trust Agreement.

### 7.25. *Compensation and Duties of Litigation Trustee*

The salient terms of the Litigation Trustee's employment, including the Litigation Trustee's duties and compensation, shall be set forth in the Litigation Trust Agreement. The Litigation Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases. The Litigation Trustee shall also be reimbursed for all documented, actual, reasonable, and necessary out-of-pocket expenses incurred in the performance of his or her duties under the Litigation Trust Agreement.

### 7.26. *Ability to Seek and Obtain Discovery*

From and after the Effective Date, the Plan Administrator, including in its capacity as Litigation Trustee and any successor Litigation Trustee, shall have the ability to seek and obtain examination (including document discovery and depositions) under Bankruptcy Rule 2004 against any Person or Entity in furtherance of the Plan and the purpose of the Litigation Trust, and the Bankruptcy Court shall retain jurisdiction to order examinations (including examinations under Bankruptcy Rule 2004) against any Person or Entity, and to hear all matters with respect to the same.

### 7.27. *Cash Investments in the Litigation Trust.*

Funds in the Litigation Trust shall be invested in demand and time deposits in banks or other savings institutions, or in other temporary, liquid investments, such as Treasury bills, consistent with the liquidity needs of the Litigation Trust as determined by the Litigation Trustee, in accordance with Bankruptcy Code section 345, unless the Bankruptcy Court otherwise requires; provided, however, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

### 7.28. *Dissolution of the Litigation Trust.*

The Litigation Trustee shall be discharged and the Litigation Trust shall be terminated, at such time as: (a)(i) all of the Litigation Trust Assets have been liquidated; (ii) all duties and obligations of the Litigation Trustee under the Litigation Trust Agreement have been fulfilled; and (iii) all Distributions required under the Litigation Trust Agreement have been made; OR (b) as otherwise provided in the Litigation Trust Agreement. Upon dissolution of the Litigation Trust, any remaining Litigation Trust Assets may be transferred by the Litigation Trustee to a charitable organization(s) or sold as part of a remnant asset sale.

### 7.29. *Control Provisions.*

To the extent there is any inconsistency between this Plan as it relates to the (i) Litigation Trust and the Litigation Trust Agreement, or (ii) the Plan Administrator Agreement, the terms of the Plan shall control.

### 7.30. *Limitation of Liability; Indemnification*

The Litigation Trustee, Plan Administrator and each of its respective designees, employees, agents, representatives or professionals shall not be liable for the act or omission of any other member, designees, agent or representative of the Litigation Trustee or Plan Administrator, nor shall they be liable for any act or omission taken or omitted to be taken in their respective capacities, other than acts or omission resulting from willful misconduct, gross negligence, or fraud. The Litigation Trustee and Plan Administrator shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee. The Plan Administrator and Litigation Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, which consultation may act as a defense for any act taken, omitted to be taken, or suffered to be done in

accordance with advice or opinions rendered by such persons. Notwithstanding such authority, the Litigation Trustee and Plan Administrator shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud. The Litigation Trust shall indemnify and hold harmless the Litigation Trustee and its designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of the Plan; provided, however, that no such indemnification will be made to such persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

**7.31. *Comprehensive Settlement of Claims and Controversies; Termination of Subordination Rights.***

(a)     Pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all Claims or controversies relating to the rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to this Plan on account of any Allowed Claim or Allowed Interest and this Plan shall be deemed a motion to approve the good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are: (i) in the best interest of the Debtors, the Reorganized Debtors, and their respective Estates and property, and of Holders of Claims or Interests; and (ii) fair, equitable and reasonable.

(b)     Except as provided herein, the classification and manner of satisfying all Claims and Interests and the respective distributions and treatments under the Plan take into account or conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) or 510(c) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan.  The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Persons and Entities from enforcing or attempting to enforce any such contractual, legal and equitable rights satisfied, compromised and settled pursuant to this Plan.

(c)     The Debtors, the Prepetition Secured Lenders, the DIP Lenders, the Creditors' Committee, and the Sponsors engaged in extensive, detailed good faith and arm's length negotiations to resolve any outstanding issues and to formulate a chapter 11 plan supported by the Prepetition Secured Lender Parties, the DIP Secured Parties, the Creditors' Committee, and the Sponsors. The Debtors, the Prepetition Secured Lenders, the DIP Lenders, the Creditors' Committee, and the Sponsors ultimately agreed to the Global Settlement, pursuant to which, among other things, (i) Prepetition Secured Agent has agreed to settle certain potential

Causes of Action against Sponsors and contribute the settlement proceeds (i.e. the Sponsor Payment) to find a portion of the Global Settlement, and (ii) the DIP Agent and Prepetition Secured Agent have agreed to carve-out collateral proceeds from their liens on specified collateral as consideration to fund portions of the Global Settlement for the benefit of junior creditors. The terms of the Global Settlement are as follows:

(i)    The Creditors' Committee supports this Plan, including but not limited to the release and exculpation provisions set forth in Article VII hereof.

(ii)   The Sponsors shall pay a total of $2,500,000 in total, with the Affinity Sponsors funding $1,250,000 and the Warburg Sponsors funding $1,250,000 (the "**Sponsor Payment**") to fund the Litigation Trust Cash Contribution and the GUC Recovery Pool. On the Effective Date of the Plan, the Sponsors shall pay $250,000 to fund the GUC Recovery Pool and $750,000 to the Litigation Trustee.   The Affinity Sponsors and the Warburg Sponsors shall each contribute the balance of their respective distributions from Mosaic Funding X LLC to the Litigation Trustee on the fifteenth (15th) day of each month until their portion of the Sponsor Payment has been fully funded (provided that, if distributions from Mosaic Funding X LLC are insufficient to satisfy the full amount of the Sponsor Payment, the Sponsors shall contribute any remaining amounts directly to the Litigation Trustee on a several basis until the Affinity Sponsors and Warburg Sponsors have each funded $1,250,000, respectively), unless the Litigation Trustee provides a notice to the Sponsors (a "**Funding Notice**") stating that the Litigation Trustee has determined that all or some of the balance of the Sponsor Payment is reasonably necessary to fund activities of the Litigation Trust.  In the event the Litigation Trustee provides a Funding Notice to the Sponsors, the Sponsors shall fund the amount requested in the Funding Notice within 5 business days and pay the balance of the Sponsor Payment, if any, out of distributions from Mosaic Funding X LLC.

(iii)  Holders of Prepetition Last Out Claims and Subordinated Notes Claims shall be subordinated and junior to all Allowed General Unsecured Claims and Allowed Consumer Credit Transaction Claims for purposes of distributions under the Plan.

(iv)   In accordance with Section 7.34, the first $1 million in proceeds from the sale of the ABS Interests shall be used to help fund the Wind-Down Budget, with the remaining proceeds to be paid to the DIP Agent for the benefit of the DIP Lenders.

(v)    In accordance with Section 7.34, any proceeds of the Debtor Loan Interests will be used to fund the GUC Recovery Pool.

     (vi)    In accordance with Section 7.34, the first $2.5 million of proceeds from any remaining Distributable Asset Proceeds will be distributed to the to the DIP Agent for the benefit of the DIP Lenders, with any additional Distributable Asset Proceeds in excess of that amount being distributed 25% to the Plan Administrator in order to fund the GUC Recovery Pool and 75% to the DIP Agent for the benefit of the DIP Lenders.

     (vii)    The Prepetition Lenders and DIP Lenders will forego any recoveries from the Litigation Trust; except to the extent proceeds remain after all holders of Litigation Trust Interests are distributed the full amount to which they are entitled pursuant to the Plan and remaining assets are transferred to the Wind Down Debtors.

     (viii)    The Consumer Liability Insurance Policies will be contributed to the Litigation Trust for the benefit of Holders of the Consumer Credit Transaction Claims.

     (ix)    The Debtors and their Estates release any claims and Causes of Action against the Sponsors, the Financing Partners, the ABS Parties, and their respective Related Parties.

     (x)    The Prepetition Secured Lenders and Prepetition Secured Agent release any claims and Causes of Action, if any, against the Sponsors, including in connection with Mosaic Funding X LLC.

     (xi)    The Global Settlement is subject to satisfaction of all of the conditions above and consummation of the Restructuring Transactions.

     (xii)    All Cash held by the Debtors that does not fund the Global Settlement or items in the Approved Budget (as defined in the Final DIP Order) shall be paid to the DIP Agent for the benefit of the DIP Lenders on the Effective Date.

### 7.32. *Additional Transactions Authorized Under this Plan.*

On or prior to the Effective Date, the Debtors shall be authorized to take any such actions as may be necessary or appropriate to reinstate Claims or Interests or render Claims or Interests not impaired, as provided for under this Plan.

Solar Mosaic LLC hereby irrevocably nominates, constitutes and appoints the Reorganized Debtor as its true and lawful attorney-in-fact (with full power of substitution) and hereby authorizes the Reorganized Debtor and/or its Affiliates or designees, in the name of and on behalf of the Solar Mosaic LLC, to execute, deliver, acknowledge, certify, file, and record any termination of any financing statement filed or recorded in the name of Solar Mosaic LLC pursuant to the Uniform Commercial Code of the applicable state prior to the Effective Date.

This limited power of attorney is and shall be coupled with an interest and shall be irrevocable, and shall survive the dissolution of Solar Mosaic LLC.

**7.33.** ***Exit Term Loan Documents.***

On or around the Effective Date, the Reorganized Debtors shall execute and deliver the Exit Term Loan Documents, and shall execute, deliver, file, record, and issue any other related notes, guarantees, security documents, instruments, or agreements in connection therewith, in each case, without (a) further notice to the Bankruptcy Court, or (b) further act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity. Prior to the Effective Date, the Debtors will file the Exit Term Sheet as part of the Plan Supplement. On the Effective Date, the Exit Term Loan Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.

**7.34.** ***Distributable Assets Proceeds.***

(a)      **ABS Interests.** On or following the Effective Date (unless effectuated prior to the Effective Date), the Wind Down Debtors or the Plan Administrator shall distribute the ABS Interests pursuant to the following priorities:

First, to the Plan Administrator in order to fund the Wind-Down Budget in an amount up to $1 million;

Second, to the DIP Agent, to the DIP Agent for the benefit of the DIP Lenders.

(b)      **Debtor Loan Interests.** On or following the Effective Date (unless effectuated prior to the Effective Date), the Wind Down Debtors or the Plan Administrator shall utilize the proceeds from the Debtor Loan Interests to fund the GUC Recovery Pool.

(c)      **Remaining Distributable Assets Proceeds**. On or following the Effective Date (unless effectuated prior to the Effective Date), the Wind Down Debtors or the Plan Administrator shall distribute all other Distributable Asset Proceeds (except for the ABS Interests and Debtor Loan Interests) pursuant to the following priorities:

First, to the DIP Agent, to the DIP Agent for the benefit of the DIP Lenders, in an amount up to $2,500,000; and

Second, (a) 75% of any remaining Distributable Asset Proceeds to be distributed to the DIP Agent for the benefit of the DIP Lenders, and (b) 25% of any remaining Distributable Asset Proceeds to be distributed to the Plan Administrator in order to fund the GUC Recovery Pool.

**7.35.** ***Lending Club License***

Pursuant to Sections 1123(b)(4) and 1141(c) of the Bankruptcy Code, the Debtors shall sell, convey and otherwise transfer certain assets and rights to the Licensee (as defined in the Lending Club License) as set forth in the Plan Supplement (the "***Lending Club License***").

Proceeds of the Lending Club License will be applied to outstanding DIP Claims pursuant to Section 3.1 of the Plan, except as otherwise agreed to by the DIP Agent.

## ARTICLE VIII.
## DISTRIBUTIONS

**8.1.** *Distributions.*

The Disbursing Agent shall make all distributions to the applicable Holders of Allowed Claims in accordance with the terms of this Plan, the Plan Administration Agreement and the Litigation Trust Agreement. Following the transfer of the Litigation Trust Assets to the Litigation Trust, the Litigation Trustee shall make continuing efforts to liquidate all Litigation Trust Assets in accordance with the Plan and the Litigation Trust Agreement, provided that the timing of all Distributions made by the Litigation Trustee to Litigation Trust Beneficiaries shall be in accordance with the Litigation Trust Agreement and the Plan.

**8.2.** *No Postpetition Interest on Claims.*

Except with respect to Allowed DIP Claims and the Prepetition Secured Loan Claims and unless otherwise specifically provided for in the Confirmation Order or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

**8.3.** *Date of Distributions.*

Unless otherwise provided herein, any distributions under this Plan and deliveries to be made hereunder shall be made on the applicable Distribution Date; <u>provided</u> that the Wind Down Debtor or Plan Administrator may utilize periodic Distribution Dates to the extent that use of a periodic Distribution Date does not delay payment of the Allowed Claim more than thirty (30) days. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**8.4.** *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various lists of Holders of Claims in each of the Classes, as maintained by the Debtors, or their agents, shall be deemed closed and there shall be no further changes in the record Holders of any of the Claims after the Distribution Record Date. Neither the Debtors nor the Disbursing Agent shall have any obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date. Additionally, with respect to payment of any Cure Amounts or any Cure Disputes in connection with the assumption and/or assignment of the Debtors' Executory Contracts and Unexpired Leases, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease, even if such non-Debtor party has sold, assigned or otherwise transferred its Claim for a Cure Amount. For the avoidance of doubt, the

"Distribution Record Date" shall not apply to the distribution of securities through DTC, which (if any) shall be made in accordance with the customary procedures of DTC.

**8.5.** ***Disbursing Agent.***

(a)     Powers of Disbursing Agent.  The Disbursing Agent shall be empowered to: (i) effectuate all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (ii) make all applicable distributions under this Plan or payments contemplated hereby in respect of the Reorganized Debtors; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court (including any order issued after the Effective Date), pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)     Expenses Incurred by the Disbursing Agent On or After the Effective Date.  Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of the Wind Down Debtors (solely if the Plan Administrator is not the Disbursing Agent), the amount of any reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including reasonable attorney and other professional fees and expenses) of the Disbursing Agent shall be paid in Cash and will not be deducted from distributions under this Plan made to Holders of Allowed Claims by the Disbursing Agent.  The foregoing fees and expenses shall be paid in the ordinary course, upon presentation of invoices to the Wind Down Debtors or Plan Administrator and without the need for approval by the Bankruptcy Court, as set forth in Section 3.2(b) of this Plan.  In the event that the Disbursing Agent and the Wind Down Debtors are unable to resolve a dispute with respect to the payment of the Disbursing Agent's fees, costs and expenses, the Disbursing Agent may elect to submit any such dispute to the Bankruptcy Court for resolution.

(c)     Bond.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors. Furthermore, any such Entity required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

(d)     Cooperation with Disbursing Agent.  The Wind Down Debtors and Plan Administrator, as applicable, shall use all commercially reasonable efforts to provide the Disbursing Agent with the amount of Claims and the identity and addresses of Holders of Claims, in each case, that are entitled to receive distributions under this Plan, as set forth in the Debtors' or the applicable Reorganized Debtors' books and records.  The Wind Down Debtors and Plan Administrator, as applicable, will cooperate in good faith with the Disbursing Agent to comply with the withholding and reporting requirements outlined in Section 8.14 of this Plan.

**8.6.** *Delivery of Distribution.*

Subject to the provisions contained in this <u>Article VIII</u>, with respect to distributions required to be made to Holders of Allowed Claims by the Plan Administrator or Wind Down Debtors under this Plan, the Disbursing Agent will, subject to Bankruptcy Rule 9010, make all distributions under this Plan or payments to any Holder of an Allowed Claim as and when required by this Plan at: (a) the address of such holder on the books and records of the Debtors or their agents; or (b) the address in any written notice of address change delivered to the Debtors or the Disbursing Agent, including any addresses included on any filed Proofs of Claim or transfers of Claim filed with the Bankruptcy Court. In the event that any distribution under this Plan to any such Holder is returned as undeliverable, no distribution or payment to such Holder shall be made unless and until the Disbursing Agent has been notified of the then current address of such Holder, at which time or as soon as reasonably practicable thereafter such distribution under this Plan shall be made to such Holder without interest; <u>provided</u>, <u>however</u>, that such distributions under this Plan or payments shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of ninety (90) days from: (i) the Effective Date; and (ii) the first Distribution Date after such Holder's Claim is first Allowed. Notwithstanding the foregoing, all distributions to be made on account of the Prepetition First Out Claims and distributions to be made on account of the Prepetition Last Out Claims, if any, shall be delivered to the Prepetition Secured Agent for the benefit of itself and the applicable Prepetition Secured Lenders in accordance with the terms of this Plan and the AAL.

**8.7.** *Unclaimed Property.*

Ninety (90) days from the later of: (i) the Effective Date, and (ii) the first Distribution Date after such Holder's Claim is first Allowed, all unclaimed property, wherever located, or interests in property distributable hereunder on account of such Claim shall revert to the applicable Reorganized Debtor or Wind Down Debtor or its successor or assign and be deposited in the Wind Down Account, and any Claim or right of the Holder of such Claim to such property, wherever located, or interest in property shall be discharged and forever barred. The Wind Down Debtors and the Disbursing Agent shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Debtors' books and records, and the Proofs of Claim filed against the Debtors, as reflected on the Claims Register maintained by the Claims Agent.

**8.8.** *Satisfaction of Claims.*

Unless otherwise specifically provided herein, any distributions under this Plan and deliveries to be made on account of Allowed Claims hereunder shall be in complete settlement, satisfaction and discharge of such Allowed Claims.

**8.9.** *Manner of Payment Under Plan.*

Except as specifically provided herein, at the option of the Wind Down Debtors or Plan Administrator, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors or Plan Administrator, as the case may be.

**8.10.** ***De Minimis Cash Distributions.***

None of the Wind Down Debtors, the Plan Administrator or the Disbursing Agent shall have any obligation to make a distribution that is less than $50.00 in Cash.

**8.11.** ***Distributions on Account of Allowed Claims Only.***

Notwithstanding anything herein to the contrary, no distribution under this Plan shall be made on account of a Claim until such Claim becomes an Allowed Claim.

**8.12.** ***No Distribution in Excess of Amount of Allowed Claim.***

Notwithstanding anything herein to the contrary, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution under this Plan of a value in excess of the Allowed amount of such Claim.

**8.13.** ***No Fractional Shares.***

Notwithstanding anything herein to the contrary, there will be no distribution of fractional shares of Reorganized Common Equity and no cash in lieu to be distributed on account of such fractional shares.

**8.14.** ***[Reserved].***

**8.15.** ***Withholding and Reporting Requirements.***

In connection with this Plan and all distributions under this Plan hereunder, the Plan Administrator, Wind Down Co, Wind Down Debtors, the Disbursing Agent and any Claims Agent shall comply with all withholding and reporting requirements imposed by any U.S. federal, state, provincial, local or foreign tax law, and all distributions under this Plan hereunder shall be subject to any such withholding and reporting requirements. The Wind Down Debtors, wind Down Co, Plan Administrator, the Disbursing Agent and any Claims Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including requiring a Holder of a Claim to submit appropriate tax and withholding certifications. Notwithstanding any other provision of this Plan: (a) each Holder of an Allowed Claim that is to receive a distribution under this Plan under this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations on account of such distribution; and (b) no distributions under this Plan shall be required to be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Plan Administrator, Wind Down Co., Wind Down Debtors, the Disbursing Agent or the Claims Agent, as applicable, for the payment and satisfaction of such tax obligations or has, to their satisfaction, established an exemption therefrom.

## ARTICLE IX.
## PROCEDURES FOR RESOLVING CLAIMS

**9.1.    *Claims Process.***

Except as otherwise required by order of the Bankruptcy Court, Holders of Claims need not file Proofs of Claim with the Claims Agent or the Bankruptcy Court and shall be subject to the Bankruptcy Court claims process only to the extent set forth in this Plan and/or Confirmation Order.

**9.2.    *Objections to Claims.***

Other than with respect to Fee Claims, only the Plan Administrator, Wind Down Debtors, Reorganized Debtors, or Wind Down Co, on behalf of itself and the other the Wind Down Debtors, shall be entitled to object to Claims on and after the Effective Date, except that nothing herein shall be understood to waive the Reorganized Debtors', Plan Administrator's, or the Wind Down Debtors' right to argue that a Claim filed against the Debtors or the Reorganized Debtors has been discharged under the Plan.   Any objections to Claims (other than Administrative Expense Claims) shall be served and filed on or before the later of: (a) one hundred eighty (180) days following the later of (x) the Effective Date and (y) the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a Holder of such Claim; and (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) hereof.  From and after the Effective Date, either the Plan Administrator or the Wind Down Debtors, as applicable, may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

**9.3.    *Payments and Distributions with Respect to Disputed Claims.***

If an objection to a Claim is filed as set forth in <u>Section 9.2</u>, except as otherwise agreed by (i) the Plan Administrator or (ii) the Wind Down Debtors, as applicable, if any portion of a Claim (other than a Fee Claim) is a Disputed Claim, no payment or distribution (partial or otherwise) provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

## ARTICLE X.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**10.1.    *Assumption and Rejection of Executory Contracts and Unexpired Leases.***

On the Effective Date, in the event a Sale Transaction is consummated, to the extent assumption has not already occurred pursuant to a Sale Order, the Assumed Contracts to be assumed and assigned in connection with such Sale Transaction will be deemed assumed and assigned to the applicable Successful Bidder in accordance with the applicable Sale Documents.

On the Effective Date, in the event of a Plan Equitization Transaction, except as otherwise provided in herein, any Executory Contracts and Unexpired Leases (i) not previously assumed, or (ii) not previously rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected as of the Effective Date <u>except</u> any Executory Contract or Unexpired Lease

identified on the Assumed Contracts List (which shall initially be filed with the Plan Supplement) as a contract or lease to be assumed.

On the Effective Date, in the event of a Sale Transaction, except as otherwise provided herein, any Executory Contract or Unexpired Lease (i) not previously assumed, (ii) not assumed and assigned in accordance with any Sale Documents, (iii) not previously rejected pursuant to an order of the Bankruptcy Court, or (iv) not subject of a pending motion to reject, assume or assume and assign, will be deemed rejected as of the Effective Date.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions, assumptions and assignments, or rejections of the Debtors' Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date or, as to assumed Executory Contracts and Unexpired Leases, on such later date as may be identified on the Assumed Contracts List.  Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order, and not assigned to a third party (including New OpCo or a designee of the Reorganized Debtors in the event of a Plan Equitization Transaction or the applicable Successful Bidder in the event of a Sale Transaction) on or prior to the Effective Date, shall be deemed rejected as of the Effective Date.  To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease or the execution of any other Restructuring Transaction (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  For the avoidance of doubt, confirmation of the Plan shall not, except as otherwise provided herein or in the Restructuring Transactions Memorandum, be deemed an assignment of any Executory Contract or Unexpired Lease of the Debtors, notwithstanding any change in name, organizational form, or jurisdiction of organization of any Debtor in connection with the occurrence of the Effective Date.

Notwithstanding anything to the contrary herein, the Debtors or Reorganized Debtors, as applicable, reserve the right to amend or supplement the Assumed Contracts List in their discretion prior to the Effective Date (or such later date as may be permitted by this Plan); provided that the Debtors shall give prompt notice of any such amendment or supplement to any affected counterparty and such counterparty shall have a reasonable opportunity to object thereto on any grounds.

**10.2.**  ***Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.***

Notwithstanding anything to the contrary herein, in the event of a Sale Transaction, the terms of any Sale Documents and any Sale Order shall govern the cure of defaults, assumption and assignment, and compliance with section 365 of the Bankruptcy Code with respect to any Executory Contracts or Unexpired Leases assumed and assigned pursuant to such Sale Documents and Sale Order.

In the event of a Plan Equitization Transaction except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such Executory Contract or Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan, any monetary defaults arising under such Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the appropriate amount (the "**Cure Amount**") in full in Cash by the Debtors either (i) on the Effective Date or as soon as reasonably practicable thereafter, or (ii) in the event of a Cure Dispute, within thirty (30) days after the date on which such Cure Dispute has been resolved (either consensually or through judicial decision).

With respect to all Executory Contracts and Unexpired Leases to which any Debtor is a party, the Debtors shall file the Assumed Contracts List, setting forth the Cure Amount, if any, for each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to Section 10.1 of this Plan, and serve such Assumed Contracts List on each applicable counterparty. **Any party to an Executory Contract or Unexpired Lease to which a Debtor is a counterparty that fails to object to the applicable Cure Amount listed on the Assumed Contracts List within fourteen (14) calendar days of the filing thereof, shall be forever barred, estopped and enjoined from disputing the Cure Amount set forth on the Assumed Contracts List (including a Cure Amount of $0.00) and/or from asserting any Claim against the applicable Debtor or Reorganized Debtor arising under section 365(b)(1) of the Bankruptcy Code except as set forth on the Assumed Contracts List.**

If, prior to the Effective Date, the Debtors identify additional Executory Contracts and Unexpired Leases to which a Debtor is a counterparty that might be assumed or assumed and assigned by the Debtors, the Debtors will promptly file a supplemental Assumed Contracts List ("**Supplemental Assumed Contracts List**") and serve such Supplemental Assumed Contracts List on each applicable counterparty. Each applicable counterparty shall have fourteen (14) calendar days of the filing thereof to object to the applicable Cure Amount set forth on the Supplemental Assumed Contracts List.

In the event of a dispute (each, a "**Cure Dispute**") regarding: (i) the Cure Amount; (ii) the ability of the applicable Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or assumed and assigned; or (iii) any other matter pertaining to the proposed assumption or assumption and assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such Cure Dispute and approving the assumption or assumption and assignment. To the extent a Cure Dispute relates solely to the Cure Amount, the applicable Debtor may assume and/or assume and assign the applicable contract or lease prior to the resolution of the Cure Dispute; provided that the Debtors reserve Cash in an amount sufficient to pay the full amount asserted as the required cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court).

### 10.3. *Claims Based on Rejection of Executory Contracts and Unexpired Leases.*

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases under this Plan must be filed with the Claims Agent within thirty (30) days after the date of the

effectiveness of the rejection of the applicable Executory Contract or Unexpired Lease. **Any Proofs of Claim arising from the rejection of the Executory Contracts and Unexpired Leases that are not timely filed shall be subject to disallowance by further order of the Court upon objection on such grounds.** All Allowed Claims arising from the rejection of the Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with Article IV, except to the extent such Allowed Claim, or a portion of such Allowed Claim, arising from the rejection of an Executory Contract is secured, in which case such Allowed Claim, or such portion of such Allowed Claim, shall be an Other Secured Claim and treated in accordance with Article IV.

### 10.4. *Contracts and Leases Entered into After the Petition Date.*

The Debtors or Reorganized Debtors, and, to the extent assigned to a Successful Bidder in the event of a Sale Transaction, the Successful Bidder, as applicable, will perform under any contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by any Debtor, and will be liable thereunder in the ordinary course of business.

### 10.5. *Reservation of Rights.*

Neither the exclusion nor inclusion of any contract or lease in the Assumed Contracts List, as applicable, nor anything contained in the Plan or Sale Documents, nor the Debtors' delivery of a notice of proposed assumption and proposed Cure Amount to any contract and lease counterparties, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, Reorganized Debtors, or Plan Administrator, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease. If there is a dispute regarding a Debtor's or Reorganized Debtor's liability under an assumed Executory Contract or Unexpired Lease, the Reorganized Debtors or Plan Administrator, as applicable, shall be authorized to move to have such dispute heard by the Bankruptcy Court pursuant to Article XIII.

### 10.6. *Employee Compensation and Benefits.*

Subject to the provisions of the Plan, all compensation and benefits programs shall be treated as Executory Contracts under the Plan and, unless otherwise rejected, to the extent consented to by the Prepetition Secured Agent and the DIP Agent, deemed assumed on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code. Confirmation of the Plan, or any assumption of compensation and benefits programs pursuant to the terms herein, shall not be deemed to trigger any applicable change of control, assignment, vesting, termination, acceleration or similar provisions therein. No counterparty shall have rights under a compensation and benefits programs assumed pursuant to the Plan other than those applicable immediately prior to such assumption.

In the event of a Plan Equitization Transaction, the Reorganized Debtors will either assume or reject the existing agreements with the current members of the senior management

team of the Debtors, or will enter into new compensation arrangements, as applicable, on the Effective Date with some or all such individuals who agree to such new arrangements, which assumption or rejection must be approved by the Prepetition Secured Agent and the DIP Agent and which new arrangements, as applicable, must be acceptable to the Reorganized Debtors and the Prepetition Secured Agent and the DIP Agent.

In the event of a Plan Equitization Transaction, the New Board shall assume, assume as amended, or reject the existing long term incentive plans of Reorganized Topco, if any, and, if applicable, its direct or indirect subsidiaries, in each case structured to incentivize operating performance and align economic interests on terms and conditions acceptable to the New Board and the Prepetition Secured Agent and DIP Agent.

In the event of a Sale Transaction, the compensation and benefits programs shall either be assumed and assigned upon consummation of an applicable Sale Transaction in accordance with the terms and conditions of the applicable Sale Documents or, if no Successful Bidder assumes the compensation and benefits programs, rejected. On the Effective Date, or in the event of assumption by a Successful Bidder of the compensation and benefits programs, all Proofs of Claim filed for amounts due under any compensation and benefits programs shall be considered satisfied by the applicable agreement and/or program and agreement to assume and cure in the ordinary course as provided in the Plan.

**ARTICLE XI.**
**CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN**

**11.1.** *Conditions Precedent to Confirmation.*

Confirmation of this Plan is subject to the satisfaction or waiver of the following conditions:

(a)     the DIP Orders shall have been entered by the Bankruptcy Court and shall remain in full force and effect;

(b)     the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with the Plan;

(c)     entry of the Disclosure Statement Order;

(d)     entry of the Confirmation Order;

(e)     the DIP Credit Agreement and the DIP Orders, shall not have been terminated in accordance with its respective terms; and

(f)     in the event of a Sale Transaction, the receipt of a Sufficient Bid and the Sale Documents shall not have been terminated in accordance with their terms.

**11.2.** ***Conditions Precedent to the Effective Date.***

The occurrence of the Effective Date is subject to the satisfaction or waiver of the following conditions:

(a)    the Confirmation Order having become a Final Order in the Chapter 11 Cases, which shall not have been stayed, reversed, vacated, amended, supplemented or otherwise modified;

(b)    no court of competent jurisdiction or other competent governmental or regulatory authority having issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the consummation of the Plan;

(c)    each of the applicable Definitive Documents having been executed, delivered, acknowledged, and/or filed, as applicable, by the Entities and Persons intended to be parties thereto and effectuated and remain in full force and effect, and any conditions precedent related thereto or contained therein having been satisfied before or contemporaneously with the occurrence of the Effective Date or otherwise waived in accordance with such applicable Definitive Documents;

(d)    in the event of the Plan Equitization Transaction, each of the offers, issuances, sales, and/or deliveries of Reorganized Common Equity in connection with the Restructuring Transactions shall be exempt from the registration and prospectus delivery requirements of the Securities Act, no proceeding by any Governmental Unit or other Entity or Person that alleges that any such offer, issuance, sale and/or delivery is not exempt from the registration and prospectus delivery requirements of the Securities Act shall be pending on the Effective Date, and no such proceeding shall be threatened in writing or instituted by any Governmental Unit on or prior to the Effective Date;

(e)    the DIP Credit Agreement and the DIP Orders, having not been terminated in accordance with its respective terms;

(f)    to the extent a Plan Equitization Transaction is implemented, all of the actions set forth in the Restructuring Transactions Memorandum, as applicable, having been completed and implemented;

(g)    there not having been instituted or threatened to be instituted any action, proceeding, application, claim, counterclaim, or investigation (whether formal or informal) by any Governmental Entity (x) making illegal, enjoining, or otherwise prohibiting the consummation of the Restructuring Transaction contemplated herein and in the Definitive Documents or (y) imposing a material award, claim, injunction, fine or penalty that, in each case, both (1) is not dischargeable, as determined by the Bankruptcy Court in the Confirmation Order, and (2) has a material adverse effect on the financial condition or operations of the Reorganized Debtors, taken as whole;

(h)    the Debtors having obtained all authorizations, consents and regulatory approvals, if any, required to be obtained, and having filed all notices and reports, if any,

required to be filed, including with any Governmental Unit, by the Debtors in connection with this Plan's effectiveness, in each case, as may be required by a Governmental Unit;

(i)     in the event of the Plan Equitization Transaction, the Reorganized Common Equity to be issued and/or delivered on the Effective Date having been validly issued by Reorganized TopCo, having been fully paid and non-assessable, and being free and clear of all taxes, Liens and other encumbrances, pre-emptive rights, rights of first refusal, subscription rights and similar rights, except for any restrictions on transfer as may be imposed by (i) applicable securities Laws and (ii) the New Organizational Documents of Reorganized TopCo;

(j)     all requisite filings with any Governmental Unit and third parties having become effective, and all such Governmental Unit and third parties having approved or consented to the Restructuring Transactions, to the extent required;

(k)     any and all requisite regulatory approvals, KYC requirements, and any other authorizations, consents, rulings, or documents required to implement and effectuate the Restructuring Transactions having been obtained;

(l)     the Plan Administrator Agreement shall have been executed;

(m)     the Reorganized Debtors have entered into a sufficient number of servicing agreements and related ancillary agreements with the Warehouses, Financing Partners and ABS Vehicles, as determined by the Prepetition Secured Agent and DIP Agent, in their sole discretion;

(n)     the Litigation Trust shall be established and validly existing and the Litigation Trust Agreement shall have been executed;

(o)     in the event of a Sale Transaction, the Sale Documents, as applicable, not having been terminated in accordance with their terms;

(p)     the following documents being in full force and effect substantially contemporaneous with the consummation of the Restructuring Transactions, and not having been, as applicable, stayed, modified, reversed, vacated, subject to any pending appeal, and/or terminated prior to the Effective Date: (a) the New Organizational Documents; (b) if applicable, any Sale Order; (c) to the extent not included in the foregoing, all financing documents needed to effectuate the Restructuring Transactions; and (d) all other documents necessary to consummate a transaction of the type contemplated by this Plan to the extent not otherwise listed above.

(q)     all conditions precedent to the effectiveness of the Exit Term Loan Documents shall be or have been, as applicable, funded and closed and be in full force and effect.

(r)     The requisite number of holders must have validly delivered consents pursuant to the consent solicitation processes commenced on August 22, 2025, with respect to each of the ABS Vehicles.

### 11.3. *Satisfaction and Waiver of Conditions Precedent.*

Except as otherwise provided herein, any actions taken on the Effective Date shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action. Any of the conditions set forth in <u>Section 11.1</u> and <u>Section 11.2</u> of this Plan may be waived in whole or part upon agreement by the Debtors and the Prepetition Secured Agent and the DIP Agent, and as the case may be, without notice and a hearing, and the Debtors' benefits under any "mootness" doctrine, but only to the extent applicable, shall be unaffected by any provision hereof. The failure to assert the non-satisfaction of any such conditions shall not be deemed a waiver of any other rights hereunder, and each such right shall be deemed an ongoing right that may be asserted or waived (as set forth herein) at any time or from time to time.

### 11.4. *Effect of Failure of Conditions.*

If all of the conditions to effectiveness have not been satisfied (as provided in <u>Section 11.1</u> and <u>Section 11.2</u> hereof) or duly waived (as provided in <u>Section 11.3</u> hereof) and the Effective Date has not occurred on or before the first Business Day that is more than 30 days after the Confirmation Date, or by such later date as set forth by the Debtors, in consultation with the DIP Agent, the Prepetition Secured Agent, and the Committee, in a notice filed with the Bankruptcy Court prior to the expiration of such period, then this Plan shall be null and void in all respects. If the Confirmation Order is vacated pursuant to this <u>Section 11.4</u>, this Plan shall be null and void in all respects, the Confirmation Order shall be of no further force or effect, no distributions under this Plan shall be made, the Debtors and all Holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and upon such occurrence, nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Debtors; or (c) constitute an admission, acknowledgment, offer or undertaking by any Debtor or any other Person with respect to any matter set forth in the Plan.

### 11.5. *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtors and inure to the benefit of and be binding on such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is impaired under this Plan and whether or not such Holder has accepted this Plan.

### 11.6. *Substantial Consummation.*

Substantial consummation of this Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

# ARTICLE XII.
## RELEASE, INJUNCTION, AND RELATED PROVISIONS

**12.1.** *Discharge of Claims and Termination of Certain Equity Interests; Compromise and Settlement of Claims, Certain Equity Interests, and Controversies.*

Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Equity Interests and Claims (other than any Existing Intercompany Equity Interests that are reinstated hereunder) of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against the Debtors, the Reorganized Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim is Allowed; or (3) the Holder of such Claim or Equity Interest has accepted the Plan. Except as otherwise provided herein, any default by the Debtors with respect to any Claim that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests (other than any Existing Intercompany Equity Interests that are reinstated hereunder) subject to the Effective Date occurring, except as otherwise expressly provided in the Plan. For the avoidance of doubt, (i) nothing in this <u>Section 12.1</u> shall affect the rights of Holders of Claims to seek to enforce the Plan, including the distributions to which Holders of Allowed Claims are entitled under the Plan, (ii) notwithstanding any other Plan provision to the contrary, in the event a Sale Transaction is consummated, the Debtors shall not receive a discharge, pursuant to section 1141(d)(3) of the Bankruptcy Code, (iii) nothing herein shall discharge any debt subject to Section 1141(d)(6) of the Bankruptcy Code, and (iv) nothing herein shall discharge any Consumer Credit Transaction Claims against Solar Mosaic LLC.

In consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle

any Claims against the Debtors and their Estates, as well as claims and Causes of Action against other Entities.

### 12.2.   *Releases by the Debtors.*

**Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "<u>Debtor Release</u>") from any and all claims, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Definitive Documents,  the Plan Equitization Transaction, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan, in each case, that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties;  provided,  however, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court.   The foregoing release shall be effective as of the Effective Date without further notice to or order**

of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release. Notwithstanding the foregoing, nothing in this <u>Article XII.2</u> shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non- compete obligation owed to the Debtors or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; and (2) all Retained Causes of Action set forth in the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after consideration of the results of the Independent Investigation and due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.

12.3.   *Third-Party Release.*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "<u>Third-Party Release</u>") from any and all Claims, Interests, Causes of Action, and any other debts, obligations, rights, suits, damages, actions,

remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Disclosure Statement, this Plan, the Definitive Documents, the Plan Equitization Transaction, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, that, the ABS Parties and the Financing Partners (solely in their capacity as Financing Partners), including the Warehouses (and each such parties' lenders thereto) shall not constitute Released Parties solely for purposes of this Section 12.3; provided, further, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; or (2) any retained Causes of Action, including, without limitation, as set forth on the Schedule of Retained Causes of Action and (3) any Consumer Credit Transaction Claims against Solar

Mosaic LLC and any Financing Partners (solely in their capacity as Financing Partners) and any ABS Released Parties.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made in good faith based upon, among other things, consideration of the Independent Investigation and after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.

For the avoidance of doubt, neither the Third-Party Release nor any other provision of this Section 12.3 shall apply to any Person or Entity that makes the Third-Party Release Opt-Out Election.

**12.4.** *Exculpation.*

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to: the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of confirmation and consummation of this Plan, making distributions under this Plan, the Disclosure Statement, the Plan Equitization Transaction, the Sale Process, the Sale Order, or the solicitation of votes for, or confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing; the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable the DIP Documents (including with respect to the DIP Loans), or any agreements, instruments or other documents related to any of the foregoing; or any other postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or confirmation or consummation of this Plan; provided, however, that the foregoing provisions of this Exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party; and/or (ii) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed

pursuant to this Plan or Final Order of the Bankruptcy Court; **provided**, **further**, that each Exculpated Party shall be entitled to rely upon the advice of counsel, to the extent otherwise permitted under applicable non-bankruptcy law, concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions. The foregoing Exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this **Article XII.4** shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in this Plan. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

12.5.  *Discharge of Claims and Termination of Interests.*

Except as otherwise provided for herein and pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests (other than any Existing Intercompany Equity Interests that are reinstated hereunder) shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property or Estates; (b) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests (other than any Existing Intercompany Equity Interests that are reinstated hereunder) shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, provided, that, nothing herein shall release, discharge or otherwise impair any Consumer Credit Transaction Claims against Solar Mosaic LLC and any Financing Partners (solely in their capacity as Financing Partners) or ABS Released Parties.

12.6.  *Injunction.*

Except as otherwise provided herein or for obligations issued pursuant hereto, all Persons or Entities that have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to Exculpation pursuant to Article XII, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or

other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties or the property or Estates of the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, discharged, exculpated or settled pursuant to the Plan, provided, that, nothing herein shall release or enjoin any Consumer Credit Transaction Claims against Solar Mosaic LLC  and any Financing Partners (solely in their capacity as a Financing Partner) or ABS Released Parties.

### 12.7. *Setoffs and Recoupment.*

Except as otherwise provided herein and except with respect to the Secured Claims, each Reorganized Debtor, Wind Down Debtor, or the Plan Administrator, as applicable, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy or non-bankruptcy law, or as may be agreed to by the Holder of an Allowed Claim, may set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any claims, rights, and Causes of Action of any nature that the applicable Debtor, Reorganized Debtor or Wind Down Debtor may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan, a Final Order or otherwise); provided that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor, Wind Down Debtor or the Plan Administrator, as applicable, of any such claims, rights, and Causes of Action.

### 12.8. *Release of Liens.*

Except as otherwise provided in the Confirmation Order, herein or in any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or

other security interests shall revert to the applicable Reorganized Debtor and its successors and assigns or the Wind Down Debtors, Litigation Trustee or the Plan Administrator, as applicable. Any Holder of a Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any Collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, the Wind Down Debtors, Litigation Trustee or the Plan Administrator (at the expense of the Debtors, Plan Administrator or Reorganized Debtors, as applicable) that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of Uniform Commercial Code termination statements, deposit account control agreement terminations, and any other applicable filings or recordings, and the Reorganized Debtors, Litigation Trustee, Wind Down Debtors or Plan Administrator, as applicable, shall be entitled to file Uniform Commercial Code terminations or to make any other such filings or recordings on such Holder's behalf.

### 12.9. *ABS Release Provisions*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, for good and valuable consideration provided by each of the ABS Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties, the Reorganized Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Agent and the Prepetition Secured Lenders (the "**Specified Releasing Parties**") will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the ABS Parties and each of such parties' Affiliates and Related Parties (collectively, the "**ABS Released Parties**") (and each such ABS Released Party so released shall be deemed forever released by the Specified Releasing Parties) and their respective assets and properties (the "**Release to ABS Released Parties**") from any and all claims, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement,

this Plan, the Definitive Documents,  the Plan Equitization Transaction, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any ABS Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan, in each case, that such Specified Releasing Party (if such Specified Releasing Party is a Debtor Releasing Party, whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) would have been legally entitled to assert or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively)  against  any of the ABS Released  Parties.

Notwithstanding anything to the contrary in the Plan, neither the foregoing provisions of this Release to ABS Released Parties nor any other release or exculpation contained herein shall operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable ABS Released Party; (ii) the rights of such Specified Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents, including any servicing arrangements and administration agreements entered into between the parties on or after the Effective Date, delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court; (iii) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein, including any servicing agreements and administration agreements entered into between the parties on or after the Effective Date; (iv) any and all rights, remedies or claims of the Debtor Releasing Parties with respect to various contracts or arrangements between any Debtor(s) and any ABS Vehicle(s) (the "***Debtor ABS Agreements"),*** and to the extent the Debtors seek to assume or reject the Debtor ABS Agreements, the Debtors' and, if applicable, the Reorganized Debtor's rights, with respect to any such motion to assume or reject the Debtor ABS Agreements are fully reserved; and/or (v) any and all rights, remedies or claims of the Specified Releasing Parties with respect to any servicing agreements, administration agreements and any other agreements to which a Specified Releasing Party is a party thereto that are entered into in connection with the Restructuring Transactions.

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Debtors, the DIP Agent, the Reorganized Debtors, the DIP Lenders, the Prepetition Secured Agent and the Prepetition Secured Lenders (the "***Specified Released Parties***"), the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Release to ABS Released Parties provided by

the Specified Releasing Parties above, each ABS Party, on behalf of itself and any other Persons that might seek to claim under or through such ABS Party, including any Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Specified Released Parties (and each such Specified Released Party so released shall be deemed forever released by the ABS Parties) and their respective assets and properties (the "***ABS Parties Release***") from any and all Claims, Interests, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Disclosure Statement, this Plan, the Definitive Documents, the Plan Equitization Transaction, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any ABS Released Parties; (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such ABS Party would have been legally entitled to assert (whether individually or collectively) against any of the Specified Released Parties.

Notwithstanding anything to the contrary in the Plan, neither the foregoing provisions of this ABS Parties Release nor any other release or exculpation contained herein shall operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Specified Released Party; (ii) the rights of such ABS Party or Wilmington Trust to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents, including any servicing arrangements and administration agreements entered into between the parties on or after the Effective Date, delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court; (iii) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein, including any servicing arrangements and administration agreements entered into between the parties on or after the Effective Date ; and/or (iv) any and all rights, remedies or claims of the ABS Parties or Wilmington Trust with respect to the Debtor ABS Agreements, and (A) to the extent the Debtors seek to assume or reject the Debtor ABS Agreements, the ABS Parties' rights with respect to any

such motion to assume or reject the Debtor ABS Agreements are fully reserved and (B) in the event of any such rejection or assumption, the ABS Parties' and Wilmington Trust's rights, remedies or claims shall not be modified, abridged, waived, released or otherwise affected with respect to any Non-Debtor party to such Debtor ABS Agreements; and/or (v) any and all rights, remedies or claims of the ABS Parties or Wilmington Trust with respect to any servicing agreements, administration agreements and any other agreements to which a ABS Party or Wilmington Trust is a party thereto that are entered into in connection with the Restructuring Transactions. Nothing in this Plan shall operate to waive, release or otherwise affect any and all rights, remedies or claims of the ABS Parties or Wilmington Trust with respect to any party that is not a Specified Released Party.

The release set forth in this Section 12.9 shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to the release set forth in this Section 12.9.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Release to ABS Released Parties and the ABS Parties Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Release to ABS Released Parties and the ABS Parties Release are: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the ABS Released Parties and/or the Specified Released Parties, including such parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Release to ABS Released Parties and/or the ABS Parties Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) a bar to any of the Debtors, the Reorganized Debtors, the Debtors' Estates, the DIP Agent, the DIP Lenders, the Prepetition Secured Agent or the Prepetition Secured Lenders asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Release to ABS Released Parties; and (8) a bar to any of the ABS Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the ABS Parties Release.

The release set forth in this Section 12.9 shall not operate to waive, release, or otherwise discharge any Claim or Cause of Action of any non-Specified Releasing Party, including any Consumer Credit Transaction Claim, against any ABS Released Party, all of which are expressly preserved except as otherwise set forth in the Plan.

**ARTICLE XIII.**
**RETENTION OF JURISDICTION**

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all

matters arising in, arising under, or related to the Chapter 11 Cases for, among other things, the following purposes:

        (a)     To hear and determine applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the Cure Disputes resulting therefrom;

        (b)     To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

        (c)     To hear and resolve any disputes arising from or relating to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004, or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

        (d)     To ensure that distributions under this Plan to Holders of Allowed Claims are accomplished as provided herein;

        (e)     To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim;

        (f)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

        (g)     To issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

        (h)     To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

        (i)     To hear and determine all Fee Claims;

        (j)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any Sale Documents (if any), the Plan Administrator Agreement, Litigation Trust Agreement, or any agreement, instrument, or other document governing or relating to any of the foregoing; provided that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection or dispute resolution clause that refers disputes to a different court and any disputes concerning documents contained in the Plan Supplement shall be governed in accordance with the provisions of such documents;

        (k)     To take any action and issue such orders, including any such action or orders as may be necessary after occurrence of the Effective Date and/or consummation of the Plan, as may be necessary to construe, enforce, implement, execute, and consummate this Plan,

including any release or injunction provisions set forth herein, or to maintain the integrity of this Plan following consummation;

(l)       To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     To hear and determine all disputes involving the existence, nature or scope of the discharge, releases and injunction provisions contained in the Plan;

(n)     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)     To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the Disclosure Statement Hearing, the Confirmation Hearing, the Administrative Bar Date, or the deadline for responding or objecting to a Cure Amount, for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

(q)     To recover all assets of the Debtors and property of the Estates, wherever located; and

(r)     To enter a final decree closing each of the Chapter 11 Cases.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, the provisions of this Article XIII shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

### 14.1.   *Dissolution of Creditors' Committee.*

If a Creditors' Committee is appointed, it shall be automatically dissolved on the Effective Date and all members, employees or agents thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases under the Bankruptcy Code, except for purposes of continued participation in any pending appeals from Bankruptcy Court orders and filing applications for Professional Person compensation in accordance with this Plan.

### 14.2.   *Termination of Professional Persons.*

On the Effective Date, the engagement of each Professional Person retained by the Debtors that are not Wind Down Debtors and the Creditors' Committee, if any, shall be

terminated without further order of the Bankruptcy Court or act of the parties; provided, however, such Professional Persons shall be entitled to prosecute their respective Fee Claims and represent their respective constituents with respect to applications for allowance and payment of such Fee Claims, and the Wind Down Debtor or Plan Administrator, as applicable, shall be responsible for the reasonable and documented fees, costs and expenses associated with the prosecution of such Fee Claims. Nothing herein shall preclude any Reorganized Debtor from engaging a former Professional Person on and after the Effective Date in the same capacity as such Professional Person was engaged prior to the Effective Date.

### 14.3. *Amendments.*

Subject to the terms and conditions of this Plan, this Plan may be amended, modified, or supplemented by the Debtors, with the prior written consent of the Prepetition Secured Agent and the DIP Agent, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court. In addition, after the Confirmation Date, so long as such action does not adversely affect the treatment of Holders of Allowed Claims and Allowed Interests pursuant to this Plan, the Debtors may make appropriate technical adjustments, remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan, and any Holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented. With the prior written consent of the Prepetition Secured Agent and the DIP Agent, the Debtors may make technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court; provided, however, that, such technical adjustments and modifications are immaterial or do not adversely affect the treatment of Holders of Claims or Interests under the Plan.

### 14.4. *Revocation or Withdrawal of this Plan.*

The Debtors reserve the right, in consultation with the DIP Agent, the Prepetition Secured Agent, and the Committee, to revoke or withdraw this Plan prior to the Effective Date and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw this Plan, in accordance with the preceding sentence, prior to the Effective Date as to any or all of the Debtors, or if confirmation or consummation as to any or all of the Debtors does not occur, then, with respect to such Debtors: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount of any Claim or Interest or Class of Claims or Interests), assumption, assumption and assignment, or rejection of Executory Contracts or leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person, (ii) prejudice in any manner the rights of such Debtors or any other Person or (iii) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Person.

### 14.5. *Allocation of Distributions under this Plan Between Principal and Interest.*

To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall for U.S. federal (and applicable state and local) income tax purposes be allocated first to the principal amount of the Claim and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts (but solely to the extent that such other amount is an allowable portion of such Allowed Claim).

### 14.6. *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, in consultation with the DIP Agent, Prepetition Secured Agent, and the Committee, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.7. *Governing Law.*

Except to the extent that the Bankruptcy Code or other U.S. federal law is applicable, or to the extent a Plan Document or exhibit or schedule to the Plan provides otherwise, the rights, duties, and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof to the extent such principles would result in the application of the laws of any other jurisdiction.

### 14.8. *Section 1125(e) of the Bankruptcy Code.*

The Debtors have, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtors, the Prepetition Secured Agent, and the DIP Agent participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, solicitation and/or purchase of the securities offered and sold under this Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or offer, issuance, sale, or purchase of the securities offered and sold under this Plan.

### 14.9. *Inconsistency.*

In the event of any inconsistency among the Plan, the Disclosure Statement, any exhibit to the Plan, or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern; provided, however, the foregoing shall not abrogate any party's consent rights. In the event of a conflict between any provision of this Plan and the Confirmation Order, the Confirmation Order shall govern and control.

### 14.10. *Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

### 14.11. *Exhibits.*

All exhibits to this Plan (including, without limitation, all documents filed with the Plan Supplement and all exhibits and ancillary agreements thereto) are incorporated and are a part of this Plan as if set forth in full herein.

### 14.12. *Notices.*

All notices, demands, or requests in connection with the Plan shall be in writing (including by facsimile or electronic mail transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile or electronic mail transmission, when received and telephonically confirmed, addressed as follows:

    (a)    if to the Debtors, to:

> Mosaic Sustainable Finance Corporation
> 601 12th Street
> Suite 325
> Oakland, California 94607
> Attention: Legal Department
> Email: legalnotices@joinmosaic.com

with copies to:

> Paul Hastings LLP
> Charles Persons
> Schlea Thomas
> 600 Travis Street, 58th Floor
> Houston, Texas 77002
> Telephone: (713) 860-7300

Facsimile: (713) 353-3100
Email: charlespersons@paulhastings.com
schleathomas@paulhastings.com

-and-

Matthew M. Murphy
Geoffrey M. King
Michael Jones
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
Email: mattmurphy@paulhastings.com
geoffking@paulhastings.com
michaeljones@paulhastings.com

(b)     if to a Prepetition Secured Lender:

Forbright Bank, as Prepetition Secured Agent
4445 Willard Avenue, Suite 1000
Chevy Chase, Maryland 20815
Attention: Kenneth Elias
Email: kelias@forbrightbank.com

with copies to:

Blank Rome LLP
Kenneth J. Ottaviano
Stephanie K. Hor-Chen
444 West Lake Street ,Suite 1650
Chicago, Illinois 60606
Telephone: (312) 776-2600
Facsimile: (312) 776-2601
Email: ken.ottaviano@blankrome.com
stephanie.horchen@blankrome.com

### 14.13. *Filing of Additional Documents.*

On or before substantial consummation of the Plan, the Debtors shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 14.14. *Reservation of Rights.*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect

to this Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Debtors with respect to any Claims or Interests prior to the Effective Date.

**14.15. *Tax Matters.***

The Wind Down Debtors, Litigation Trustee, Wind Down Co, or Plan Administrator, as applicable, shall be authorized to request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors or Litigation Trust, as applicable for any and all taxable periods ending after the Petition Date through, and including, the Effective Date. In the event of a Sale Transaction, from and after the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors reflecting all tax consequences relating to the activities of the Wind Down Debtors as attributable to and for the account of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

It is intended that the Litigation Trust qualify as a grantor trust for federal income tax purposes, and that the Litigation Trust Beneficiaries are treated as grantors. The transfer of the Litigation Trust Assets will be treated for federal income tax purposes as a transfer to the Litigation Trust Beneficiaries, followed by a deemed transfer from such Litigation Trust Beneficiaries to the Litigation Trust. Accordingly, the Litigation Trust Beneficiaries will be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Litigation Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. Generally, all items of income, gain, loss, deduction, and credit will be included in the income of the Litigation Trust Beneficiaries as if such items had been recognized directly by the Litigation Trust Beneficiaries in the proportions in which they own beneficial interests in the Litigation Trust. Unless indicated otherwise, the rest of this discussion assumes that the Litigation Trust will qualify as a grantor trust for federal income tax purposes, and that the Litigation Trust Beneficiaries are treated as grantors.

The Litigation Trustee shall comply with all tax reporting requirements, including, without limitation, filing returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation § 1.671-4(a) and the guidelines set forth for a "liquidating trust" in Revenue Procedure 94-95, 1994-2 C.B. 684. In connection therewith, the Litigation Trustee may require Litigation Trust Beneficiaries to provide certain tax information as a condition to receipt of Distributions, including certification of the Litigation Trust Beneficiary's Taxpayer or Employer Identification Number.

Except to the extent definitive guidance from the IRS or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations or the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the Litigation Trust as a liquidating trust for purposes of the IRC and applicable Treasury Regulations, as soon as reasonably practicable after the Litigation Trust Assets are transferred to the Litigation Trust, the Litigation Trustee shall make a good faith valuation of the Litigation Trust Assets. Such valuation shall be made available from time to time to all parties to the Litigation Trust Agreement and to all Litigation

Trust Beneficiaries, to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

In accordance with the provisions of section 6012(b)(3) of the IRC, the Litigation Trustee shall cause to be prepared, at the cost and expense of the Litigation Trust, the income tax returns (federal, state and local) that the Debtors are required to file (to the extent such returns have not already been filed by the Effective Date). The Litigation Trustee shall timely file each such tax return with the appropriate taxing authority and shall pay out of the Litigation Trust Assets all taxes due with respect to the period covered by each such tax return.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Litigation Trustee), attribution of Litigation Trust taxable income or loss shall be by reference to the manner in which any economic gain or loss would be borne immediately after a hypothetical liquidating distribution of the remaining Litigation Trust Assets. The tax book value of the Litigation Trust Assets for purpose of this paragraph shall equal their fair market value on the date the Litigation Trust Assets are transferred to the Litigation Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

All income of the Litigation Trust will be subject to tax on a current basis. The Plan requires the Debtors, the Litigation Trust, and the Litigation Trust Beneficiaries to report consistently with characterization of the Litigation Trust as a grantor trust and requires the Litigation Trustee to file tax returns treating the Litigation Trust as a "grantor trust" pursuant to Treasury Regulation section 1.671-4(a) and to report to each Litigation Trust Beneficiary a statement of the Litigation Trust Beneficiary's share of Litigation Trust income, gain, loss, deduction, and credit for inclusion in the Litigation Trust Beneficiary's U.S. federal income tax return. Litigation Trust Beneficiaries therefore may owe tax on Litigation Trust income, without regard to whether cash distributions are made to beneficial owners by the Litigation Trust.

Amounts paid to Litigation Trust Beneficiaries are subject to generally applicable withholding, information, and backup withholding rules. The Litigation Trustee may require any Litigation Trust Beneficiary to furnish to the Litigation Trustee its employer or Taxpayer Identification Number as assigned by the IRS or certify to the Litigation Trustee's satisfaction that Distributions to the Litigation Trust Beneficiary are exempt from backup withholding. The Litigation Trustee may condition any Distribution to any Litigation Trust Beneficiary upon receipt of such identification number. If after reasonable inquiry, any Litigation Trust Beneficiary fails to provide such identification number to the Litigation Trustee, the Litigation Trustee shall deem such Litigation Trust Beneficiary's Claim as Disallowed and no Distribution shall be made on account of such Litigation Trust Beneficiary's Claim.

The Litigation Trustee may request an expedited determination of taxes of the Debtors or of the Litigation Trust under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on

behalf of, the Debtors and the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.

Respectfully submitted,

Dated: August 29, 2025

**MOSAIC SUSTAINABLE FINANCE CORPORATION,** on behalf of itself and its affiliated Debtors

_/s/ Mark A. Renzi_
Name:  Mark A. Renzi
Title:  Chief Restructuring Officer